## LEKTOPHONE CORPORATION v. SYLO LIGHTING FIXTURE CO.

(Circuit Court of Appeals, Second Circuit. December 6, 1926.)

No. 91.

1. Patents ⨂328—No. 1,271,527, claims 29, 30, and No. 1,271,529, claims 1-4, 8, for paper cone loud speakers, held not infringed.

Patent No. 1,271,527, claims 29, 30, and patent No. 1,271,529, claims 1-4, 8, relating to paper cone loud speakers, held not infringed.

2. Patents ⨂165—Requirements stated in claims limit claims.

Requirements of invention, as stated in claims, limit claims.

Appeal from the District Court of the United States for the Eastern District of New York.

Patent infringement suit by the Lektophone Corporation against the Sylo Lighting Fixture Company. Decree for plaintiff (11 F.[2d] 421), and defendant appeals. Reversed.

W. H. Crichton Clarke, of New York City, for appellant.

Pennie, Davis, Marvin & Edmonds, of New York City (William H. Davis, and R. Morton Adams, both of New York City, of counsel), for appellee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. The appellee sues for infringement of claims 29 and 30 of patent No. 1,271,527, applied for July 14, 1913, renewed March 23, 1918, and granted July 2, 1918, and claims 1, 2, 3, 4, and 8 of patent No. 1,271,529, applied for July 14, 1913, renewed March 22, 1918, and granted July 2, 1918. The patents relate to paper cone loud speakers, which are said to have supplemented the sound box horn combination used in phonographs and in radio loud speakers.

[1] Patent No. 1,271,529 is referred to as the major patent, and is an acoustic device of the sounding board type, as distinguished from the sound box horn type. It is comprised of three elements: (a) A large, stiff, light cone of vibratile material, freely exposed to unconfined air and of sufficient area to impart to the surrounding free air, when vibrated, sound waves substantially corresponding in intensity to the original sound waves; (b) a rigid support; and (c) an annular rim interposed between the rigid support and the conical portion, to maintain the place of the conical active portion, and yield sufficiently to permit the required motion of the conical portion, resisting displacement of the conical portion in just that degree necessary to maintain the form and neutral position of the active conical portion.

Patent No. 1,271,527, referred to as the minor patent, is involved in this claim of infringement only with respect to the arrangement of the vibration transmission means to impart to the new acoustic device of the previous patent, vibrations which are relatively much shorter than the vibrations imparted to the sound vibrating element. The patentee says that his inventions relate to instruments which produce sounds, and are particularly directed to the attainment of a direct propagation in free air, from a record or equivalent element subjected to the action of the original sound waves or vibration of self-sustaining sound waves substantially corresponding in intensity and amplitude, as well as in pitch and timbre, to the original sound waves, as distinguished from an initial generation of violent air disturbances in a confined space, and a subsequent transformation of such disturbances into self-sustaining sound waves by means of a megaphone, horn, or other amplifier.

He points out that the talking machine or sound box horn combination employs, to propagate the original sound waves in air, a sound box associated with a horn, and that the sound box alone is incapable of propagating self-sustaining sound waves in the air, because of the fact that the air disturbances created by the vibration of its diaphragm, and which issue through its mouthpiece, are almost immediately dissipated if the horn is removed, and that the function of the horn is therefore to prevent this dissipation and control the lateral form of air wave during a progressive spreading action, which is accompanied by the lessening of the violence of the disturbances until a wave front of greater area is attained, having a movement appropriate to the sound conductivity of the air; also that in this way satisfactory efficiency of emergency transformation is attained, but it is always accompanied by distortions of sound, giving rise to those characteristic sounds of the phonograph or horn sounds. The object of the invention is to regenerate the original sounds directly, without interposition of a confined body of air as a sound box, and without the employment of a restrictive transformer as a horn.

The invention (patent No. 1,271,529) consists in the provision of a tympanum of a

novel construction, which is capable of responding to the high frequency of vibrations employed in the reproduction of sounds and of imparting these vibrations to a large body of air. The tympanum is constructed of light vibratile material, and has an annular plane peripheral portion, or sounding rim, the outer edge of which is tightly gripped and rigidly supported between the rings of a central conical portion arising from the inner edge of the rim. The plane peripheral portion of the tympanum maintains the place of the conical active portion of the tympanum, and yields sufficiently to permit of the required motion of the conical portion, resisting, however, displacement of the conical portion in just that degree necessary to maintain the form of neutral position of the active conical portion.

The patentee explains that for satisfactory regeneration of sounds from a record, or other sound-vibrating element, it is necessary that the whole diameter of the tympanum from ring to ring should exceed 9 inches, in order that the conditions required to regenerate the sound waves in the manner described shall be fulfilled. The base of the central conical portion should exceed in area one-half of the effective area of the entire tympanum; that is, the area of the aperture in the rings; that is to say, that the diameter of the base of the conical portion should be at least eight-tenths of the diameter of the aperture. The altitude of the conical portion should be at least one-quarter of the diameter of its base. It is pointed out that it is possible to make some variation from the approximate sizes given without materially altering the result, but any great variation in these proportions will be found to affect the character of the reproduction.

It is said to be of vital importance that the tympanum be made of crisp, strong material, without considerable rigidity within itself, and that the tympanum as a whole be extremely light and have as little inertia as possible, without a weakening effect. The tympanum is a conical form with a smooth surface, and this has been found to be satisfactory. The patentee also says that it is conceivable that, when the tympanum is provided with corrugations, some variations from the proportions above given may be made; but such variations will not be great. The tympanum should be preferably constructed of collodial substance, and should be from three to twenty one-thousandths of an inch in thickness, according to the crispness or stiff character of the material used. The claims are as follows:

No. 1,271,527.

"29. In a sound-regenerating machine, a vibratile conical tympanum of large area rigidly supported at its periphery and freely exposed to unconfined air, a sound-vibrated element, and vibration transmission means connecting said element and said tympanum, and arranged to impart to the tympanum vibrations which are relatively much shorter than the vibrations imparted to the said element.

"30. In a sound-regenerating machine, a vibratile conical tympanum rigidly supported at its periphery and freely exposed to unconfined air, a sound-vibrated element, and vibration transmission means connecting said element and said tympanum, arranged to impart to the tympanum vibrations which are relatively much shorter than the vibrations imparted to the said element; the tympanum having an area sufficiently large to effect, without amplification, sound waves of large volume and carrying power."

No. 1,271,529.

"1. An acoustic device, comprising a tympanum rigidly supported at its periphery and having a free area exceeding nine inches in diameter and a conical portion, the diameter of which is not less than eight-tenths of the diameter of said free area.

"2. An acoustic device, comprising a tympanum rigidly supported at its periphery and having a free area exceeding nine inches in diameter, and a conical portion, the diameter of which is not less than eight-tenths of the diameter of said free area, said conical portion being rigid in the direction of the axis of the tympanum.

"3. An acoustic device, comprising a tympanum rigidly supported at its periphery and having a free area exceeding nine inches in diameter and a conical portion, the diameter of which is not less than eight-tenths of the diameter of said free area, the altitude of said conical portion being substantially one-quarter of the diameter of its base.

"4. An acoustic device, comprising a tympanum support having a circular aperture, and a light tympanum freely exposed to unconfined air and having its outer edge rigidly mounted on said support in said aperture; said tympanum having a central conical portion, the base of which exceeds in area one-half the effective area of the said tympanum; the tympanum being of sufficient area to impart to the surrounding free air, when vibrated, sound waves substantially corresponding in intensity to the original sound waves."

"8. An acoustic device, comprising a tympanum embodying a bodily movable, central conical portion, and an annular rim which encircles said conical portion and which is rigidly supported, said conical portion being freely exposed on all sides to unconfined air and being of sufficient area to produce self-sustaining sound waves in the surrounding air when vibrated, substantially as described."

In each of the claims of patent No. 1,271,529 the means described for the mechanical combinations are made up of three elements: First, the large, active, conical portion; second, the rigid support; and, third, the interposed flexible supporting rim. The active conical portion of the tympanum is the light, stiff, and easily vibrated sounding board. It is capable of exciting self-sustaining sound waves directly in free air surrounding it. The rigid support is the structural foundation of the instrument and the fulcrum for the intermediate flexible rim. If the rigid support were applied directly to the periphery of the cone, it would deaden the vibrations. So there was interposed, between the rigid support and the cone, the flexible rim or a plane peripheral portion adapted to maintain the form and neutral position of the conical sounding board, and yet yield sufficiently to permit the desired vibratory sound-producing motion.

The inventor in his testimony explains, in referring to the sound box horn combination, that it could not faithfully reproduce sounds, because the horn and confined air resonances and the sounding box had mechanical vibrations, which generated disturbing sounds within the audible range. He says the sound box generates high pressure air disturbances, which will be dissipated upon issuing from the mouth of the sound box, if it were not for the horn, and further he points out how the horn confines the air wave and allows it to expand slowly, with decrease in the violence of the disturbance and increase in area, until, when the wave has reached the bell of the horn, it is of suitable area and amplitude of vibration to be taken up by the air in the form of a self-sustaining sound wave. He says that the transmission of energy in the sound box horn combination is efficient, but is accompanied by unavoidable distortions. The purpose of the present inventions is to improve the quality of sound reproduction. Therefore he eliminated the sound box horn combination, and turned to the sounding boards of the piano sound board type, and made experiments which finally resulted in the acoustic device which he has devised, and for which these patents have been granted.

With these intended purposes in mind, and also the limitations of the claims, we think we are required to consider only the questions of infringement in so far as the appellant's device is concerned. Many patents of the prior art have been referred to, both on the oral argument and in the briefs, as in anticipation of the patents in suit. But, since we have concluded that the appellant does not infringe the patents here sued upon, we will consider only the question of the appellant's infringement.

Claims 29 and 30 of patent No. 1,271,527 each call for two elements, and each claim specifies a vibratile conical tympanum of large area rigidly supported at the periphery. This patent was intended for use on a phonograph, and the second patent was intended for use in the radio, telephone, and phonograph arts. It is the appellee's claim that the smaller patent was copied by the radio artisan in working out a radio loud speaker. In the phonograph, the means corresponding to the broadcasting station is the horn into which the operator speaks in order to make the master record. A transmission means connecting the microphone at the broadcasting station with the electrically vibrating element at the receiving station is the ether, and this cannot be electrically arranged to impart to the tympanum vibrations which are relatively much shorter than the vibrations imparted to said element or microphone.

However, what the inventor here desired was to make a weak wax record shake a large tympanum without gouging the record. He gave the stylus a leverage on the horn. He devised the rings and spider arms in tubular casing to support a large tympanum, without letting it rest on or too heavily wear the wax record. A radio broadcaster and receiver, together with the connecting ether, is now said to be the equivalent of the appellee's phonograph, operating the same way and performing the same functions and achieving the same results. The inventor employs an electrical leverage device to operate the loud speaker in order to conserve the operating power.

We cannot see any correspondence, in function or operation, between a record phonograph and a broadcasting and receiving station, between which the ether serves as a "vibration transmission means." What the claims call for is less motion imparted to the diaphragm than is imparted to the sound-vibrated element. Reduction of motion is between the elements of the combination. The difference between these claims and the major patent is that the transmission mech-

anism is "arranged to impart to the tympanum vibrations which are relatively much shorter than the vibrations imparted to the said element." A radio broadcaster and receiver, with the connecting ether, cannot be held to be the equivalent of appellee's phonograph means. It does not operate in the same way or perform the same function, nor does it secure the same results.

[2] It is apparent that, considering the state of the art at the time the patentee made his inventions and the statement of claims, both the appellee's patents were limited to a tympanum rigidly supported on its periphery. The appellant does not rigidly support or hold its periphery. It has a yielding periphery. The yielding support is not at its periphery, but at its center or inside aperture in the conical support. The patentee points out that it is essential to the success that his device have a tympanum of a large area, and that the base of the vibratile portion thereof exceed nine inches in diameter, and further that the periphery edge of the tympanum exterior of the vibratile portion be rigidly secured or tightly gripped between the rings of the supporting frame. These requirements of the essential characteristics of the invention were included in the claims. And the claims are thus limited. White v. Dunbar, 119 U. S. 47, 7 S. Ct. 72, 30 L. Ed. 303; Sargent v. Hall, 114 U. S. 63, 5 S. Ct. 1021, 29 L. Ed. 67.

Claims 1, 2, and 3 of patent No. 1,271,529 are not infringed, making due allowances for the rule as to a reasonable range of equivalents. They do not apply to an inturned plane, nor do they apply to an inturned frustrum, and the appellant does not construct its structure within the dimensional limitations referred to in the claims. These claims, in addition to being limited to the tympanum rigidly supported at its periphery, are also limited to a structure having a free area exceeding nine inches in diameter and the conical portion of which is not less than eight-tenths of the diameter exposed to unconfined air. The construction of the appellant's tympanum does not provide for either of these. The rear cone is truncated, so as to form a frustrum with a circular aperture. The structure is supported by a metal bracket with circular rings, to which the edges of the frustrum of the rear cone are rigidly attached. Free air, as used with reference to the patented structure, we think, is intended to be the area of the entire tympanum within the aperture of the supporting rings. The entire surface of both cones and the surface of the frustrum of the rear cone to the supporting rings at the back are subject to free air.

Claim 4 contains a limitation that the base of the central conical portion exceeds in area one-half the effective area of the tympanum. The appellant has no central conical portion and noneffective area. Both the appellant's cones act. The supporting truncated cone throws back the vibrations received from the other cone. There is no distorting or wave effect, as results from the appellee's encircling rim, and therefore they function differently.

Claim 8 calls for central conical portion and the annular rim which encircles the conical portion. In appellant's device there is no annular encircling rim; the two cones being of equal size, one being truncated. This claim also specifies that the central conical portion shall be freely exposed on all sides to unconfined air. In appellant's structure neither cone is freely exposed on its inner face to the air confined or unconfined. The appellant's device can radiate air waves freely from both faces, while the appellee's device can do that only from the outer faces of the cones. There is a rebounding and resounding effect as to all vibrations set up by the appellant's full cone, when they strike the inner face of the truncated cone. Since the appellant's structure had none of these required essentials as set forth in this claim, it does not infringe.

We find that there is no infringement of any of the claims sued on.

Decree reversed.