### ATLAS TRAILERS & WATER MUFFLERS, Inc., v. GRAY'S IRON WORKS, Inc., et al.

#### No. 183.

District Court, S. D. Texas, at Galveston.
Aug. 19, 1930.

Andrews, Streetman, Logue & Mobley, of Houston, Tex., and Levy & Levy, of Galveston, Tex., for plaintiff.

Williams, Neethe & Williams, of Galveston, Tex., and Hardway & Cathey, of Houston, Tex., for defendants.

HUTCHESON, District Judge.

Plaintiff sues for an injunction and for damages, alleging the infringement by defendants of a patent, No. 1,544,465, granted to W. H. Lovell et al. and now by assignment the property of plaintiffs.

The patent relates to improvements in trucks. Both plaintiff's and defendants' devices, as exhibited in model form at the trial, show a cotton trailer, low, flat, having a central beam with two side bars, upper and lower fifth wheels adapted for securing short turning, and the evidence shows that both plaintiff's and defendants' trucks operate efficiently and economically in the business for which they are designed.

The evidence also shows quite extensive commercial use of plaintiff's trailer, and that, whether the device displays invention or not, it is a commercially useful article.

As described in it, the patent "relates to improvements in trucks, and has for an object to provide an improved truck adapted particularly to be hauled in trains by tractors in which the front and rear wheels are mounted for pivotal steering movement with connections between the same for coordinating this movement."

Defendants contest plaintiff's suit on several grounds:

(1) That, in view of the state of the art at the time the patent was issued, plaintiff's device does not exhibit invention, but merely mechanical skill.

(2) That plaintiff's assignor was not the first and prior inventor.

(3) The claims, while purporting to claim a valid patentable combination, merely describe an aggregation of old elements, each operation in accordance with its own function, and together producing no new or novel function.

(4) That, if the claims are valid, they are not infringed (a) because for a combination some of the elements of which are wanting in defendants' device; (b) because in the course of the progress of the application from the Patent Office certain claims were rejected, and certain restrictions inserted in those remaining, which give to the patent such a narrow scope as that only the precise copying of the device will constitute an infringement of it.

Much evidence was offered upon the point that Voight, and not Lovell, was the first and prior inventor, and it tends strongly to establish the defense; and, were it not for the fact of the interference prosecuted by Voight, and his subsequent abandonment of it, followed by the patent to Lovell, I should be strongly inclined to the view that the defense was made out.

In view of the sharp conflict in the evidence, and of the heavy burden which the circumstances surrounding the assertion of the defense now puts upon defendants [American Optical Co. v. Shur-On Optical Co. (D. C.) 9 F.(2d) 932; Drum v. Turner (C. C. A.) 219 F. 188], I am disinclined to and will not sustain that defense.

The defense of noninfringement is also strongly presented from the viewpoint of the narrow and strictly definitive scope of plaintiffs' grant in the light of the admitted fact that defendants do not use some of the elements of plaintiffs' combination.

There can be no question that, if plaintiffs' patent has any validity, it must be limited very narrowly, for it was granted in a field already worked out. It consists, either of a mere aggregation of old elements, as claimed by the defendants, or of nothing more than a combination of such elements. In such case infringement cannot be predicated of a device which uses a portion, but not all, of the parts of the combination. Dry Hand Mop Co. v. Squeez-Ezy Mop Co. (C. C. A.) 17 F.(2d) 465.

Here defendants make their upper fifth wheels do the work of the complainants' upper fifth wheels and V-shaped supports. In plaintiff's patent there is claimed means for connecting the lower fifth wheels of both trucks to the trailer, whereas defendants connect the front and rear axle by crossed steel bars, and not fifth wheels. Neither do the defendants use one drawbar for detaching the mounting in connection with the lower fifth wheel of the trailer.

It is the law that "a combination is an entirety," and that, "if one of its elements is omitted, the thing claimed disappears." Wichita Visible Gasoline Pump Co. v. Clear Vision Pump Co. (C. C. A.) 19 F.(2d) 435, 437; Sargent v. Hall Safe & Lock Co., 114 U. S. 86, 5 S. Ct. 1021, 29 L. Ed. 67. But though this is the law in its general statement, it seems to me that the devices of plaintiff and defendants are so essentially alike in their structure, form, and operation, that it would be keeping the promise to the ear while it breaks it to the hope, to say that plaintiff has a patent valid at all and not here infringed, for the most narrowly constructed claim in the most crowded art has some "range of equivalency." Sanitary Refrigerator Co. v. Winters, 280 U. S. 30, 50 S. Ct. 9, 10, 74 L. Ed. 147. I am therefore not willing to sustain the defense of noninfringement, but will find that, if plaintiff's patent is valid, it is infringed.

When the question of validity for want of invention is examined, either from the general standpoint that no invention was involved in conceiving plaintiff's device, or from the more detailed point of attack, that the claims define merely an aggregation of old elements, without new function, I think the case is different, and that plaintiff must fail, because nothing in the patent discloses that imaginative flash which makes the jump spark connection between quest and discovery, which is called invention.

In the first place, it seems entirely plain to me that the patent involves a mere aggregation and combination of old elements, evolving no new co-operative function. Grinnell Washing Machine v. Johnson Co., 247 U. S. 428, 38 S. Ct. 547, 549, 62 L. Ed. 1196. That case lays down the rule that "generally speaking, a combination of old elements in order to be patentable must produce by their joint action a novel and useful result, or an old result in a more advantageous way," and specifically, that, "so long as each element performs some old and well-known function, the result is not a patentable combination, but an aggregation of elements."

An analysis and study of the patent in suit, its drawings, specifications, and claims, in the light of the prior art, shows plainly that this is so, and this is emphasized by a reading of the file wrapper, which shows that, though a mere paraphrase, and in some in-

stances almost a copying of old claims, largely because of the insistence in the application, supported by photographs and illustrations of tractors in active use, upon the widespread acceptance of the trailer in commercial use, the patent was granted.

After its first rejection, the applicant, in addition to discussing some of the cited references, and attempting to differentiate them in wholly inconsequential points, emphasized the advantage of its fifth wheel construction, both as to the metal used, and as to the method of attachment thereof, using this language: "The high bolster or block is dispensed with and the strain is transferred in one plane from the rods directly to the small king bolt."

The applicant then goes on: "The construction of the V shaped supports, together with the central longitudinal beam, the arrangements of the fifth wheels and the wide plates *14* together with the other parts form a small flat yet very strong and durable construction. Applicant's devices have gone into use and attached is a circular showing the wide uses to which the device may be put, the very small, squat construction of the truck whereby great numbers of these may be hauled by a tractor while carrying heavy loads."

Then follow photographs of the trucks in use, loaded with cotton, and advertising circulars put out by those interested in the sale of the trucks.

Upon this showing, which in no manner properly differentiated the references cited or presented or claimed any result involving invention, the patent was granted.

It will be noted that nowhere, either in the patent or in the application, or in any of the proceedings attending the passing of the application through the Patent Office, was any claim made that the invention consisted in providing flexibility to the trucks through the use of the central longitudinal beam; that on the contrary, it is stated in the application and in the specifications, page 2, line 54, of the final patent: "Moreover, the strain is taken up by the V shaped supports for the upper fifth wheel, and the construction is found in actual use to be an extraordinary staunch and vigorous one for use in hauling where breakage of parts and consequent high operating costs are common."

The emphasis in the patent is laid upon that thing which the prior art had already developed, in substantially the same form as that claimed by plaintiffs, the achievement of a short-turning movement and the placing of the drawing strains so that there would be no tendency to pull out or distort the king bolt.

At the trial, however, confronted with the claim that there was nothing new in the fifth wheel construction, plaintiff conceded that there was no novelty in its device unless in the use of the central longitudinal beam, and in its brief plaintiff presented the idea thus: "The main essential feature of novelty which defendants believe to constitute a marked advance in the art, operating to make a successful trailer where others have failed, is the construction of the frame work supported by the axles. This framework includes a central longitudinal beam."

On page 17 of the brief, the claim is stated thus: "The central longitudinal beam acts something like the backbone of the frame and the side rails are of sufficiently thin metal to be flexible. This allowed the frame to be resilient *under strains of the load and to bend and flex laterally without undue strain upon the connections between the different parts of the frame.*"

And on page 3 of the brief, plaintiff sums the whole matter up thus:

"The Atlas trailer, the trailer covered by the patent in suit was a new departure. It appears that Lovell and Brown conceived the idea of the invention covered by the patent in suit as the result of requests made upon them by the Cotton Concentration Company for a better trailer, due to difficulties experienced by that company in obtaining a suitable type of trailer which would stand up under the heavy loads which must be hauled in transporting the cotton about the warehouse.

"It appears from the testimony of the witnesses that the trailers previously employed had a rigid frame thereon, and when the load was moved over uneven ground, the wheels of the trailer would not be of the same level, some of them sinking into depressions in the roadway, or being raised to a higher level by passing over the rails of the railway track, and in so doing the frame was twisted and distorted to some extent so that the connections between the different parts of the frame would break and the rivets would be sheared off thus causing breakage and allowing the cotton bales to fall from the trailer. It was the idea developed by Lovell and Brown that if the frame was made flexible so that there might be some resiliency and spring in the frame it could be distorted out of its ordinary shape without breakage. The solution of the problem lays particularly in the use of a central longitudinal I beam act-

194

ing as a backbone for the structure with lighter flexible side rails parallel therewith. The longitudinal member was connected transversely by braces and by plates adjacent each end, beneath which were the fifth wheels upon which the frame was supported. I frame thus constructed was flexibe. and yet strong, and made it possible to transport heavy loads with little breakage."

The difficulties in the way of plaintiff to recover under this statement of his case are many. In the first place, no such invention was ever claimed by Lovell and Brown in any of the proceedings which led up to the granting of the patent, in the patent as finally granted, or in the actual use and operation of the device. It was only when confronted at the trial with the state of the prior art that this idea was put forward.

In the second place, nothing in the evidence justifies the conclusion that the use of the longitudinal bar or the framework construction has brought about such a resilience as to give the truck the commercial advantages which it enjoys. The evidence overwhelmingly shows that these advantages spring out of the material used in the construction, the undoubted value for train movements of the well-known fifth wheel construction, and the greater serviceability of the trucks when made of metal and equipped with rubber tires over the old style of trucks made of wood and equipped with iron tires. See testimony of Voight. While finally, if the evidence did show that the use of the central longitudinal beam has given the resiliency claimed, and if the patent had been granted upon the use of such beam, as showing invention, it could not stand, because there is not, then cannot be, invention in the matter of using in a truck, a car, or a wagon body one or two bars for the purpose of giving the truck resiliency, because the attainment of the desired resiliency in the character of the framework is bound to be merely a matter of trial and error, in the exercise of proper mechanical skill.

Not only does the prior art show that the general purpose which plaintiff was trying to achieve, and the general form of fifth wheel devices which achieved it, were fully disclosed in the prior art, but specifically that practically everything that plaintiff is now claiming has been claimed in some prior patent. Even the single longitudinal beam has been shown in several of the patents, though not claimed, because merely a part of the mechanical structure of the frame, having no functional relation to the objects of short turning and easy following in trailers. A good mechanic

having before him almost any of the patents shown in the record, and having the commercial needs which plaintiff was called upon to supply, could have done the thing which plaintiff did without employing invention, just as Voight did it, and Lowell did it, when the time was ripe, without the exercise of any inventive genius whatever.

Not only do the patents of Forscher, Joubert, and Johnson, cited in the Patent Office, anticipate plaintiff's device, but numbers of others, Clark, No. 1,167,270, Warenskjold, 457,388, Nesom, 867,998, while Kendrick, No. 9,047,043, Carman, No. 116,812, and Olson, 1,234,338 specifically anticipate it. And not only do these patents anticipate plaintiff's device in the only features of it which disclose invention, that is, those features which accomplish the short turning, and make it possible to draw long trains around in circumscribed places, but the slightest reflection upon that part of the device which plaintiff claims is new, and not anticipated, will show that there is not, and cannot be any invention in what plaintiff has done.

He has taken a truck, made it of metal of a certain design, making his construction out of combinations which produce no new and useful result not inherent in the combinations themselves.

It is true that he has produced a good structure, but mere mechanical excellence has never been patentable. While it is difficult to recognize, and more difficult to define, invention, it can be safely said that it is something more than a mere aggregation of members into a useful structure; that it is something more than the mere bringing together of material to produce the obvious result of that assembling.

There must be something there which, though not always recognizable by objective criteria, yet can be felt as invention; a result achieved by the exercise of the imagination, that luminous quality of the mind, which when the path is darkest for the feet of a discoverer, sheds its light along the way, and which gives the mind the power to range when the track is cold, to cast in ever-widening circles to find a fresh scent, instead of standing baying where the track was lost.

Here plaintiff has used excellent materials to make a workable truck, this and no more. Such a result, while commendable, is not patentable, and cannot give plaintiff the monopoly which he seeks.

Finding, as I do, that plaintiff's device shows no invention, the bill will be dismissed, with costs.