## LEKTOPHONE CORPORATION v. BRANDES PRODUCTS CORPORATION.

Circuit Court of Appeals, Third Circuit.
June 7, 1927.

No. 3603.

1. Patents ⊜═⊃328—Hopkins, 1,271,529, for cone sounding board, held valid and infringed.

Hopkins patent, No. 1,271,529, for an acoustic device, a cone sounding board, *held* valid, not anticipated, and infringed.

2. Patents ⊜═⊃328—Hopkins, 1,271,527, for sound-regulating machine, held invalid.

Hopkins patent, No. 1,271,527 for sound-regulating machine, *held* invalid.

Appeal from the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Suit by the Lektophone Corporation against the Brandes Products Corporation. From a decree dismissing the bill (16 F.[2d] 934), plaintiff appeals. Affirmed in part, and in part reversed and remanded, with instructions.

Pennie, Davis, Marvin & Edmonds, of New York City (William H. Davis, John F. Neary, and Vernon T. Houghton, all of New York City, of counsel), for appellant.

Gifford & Scull, of New York City (George F. Scull, of New York City, John B. Brady and John Boyle, Jr., both of Washington, D. C., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. This case concerns cone sounding boards, and charges infringement of patent No. 1,271,529, granted July 2, 1918, to Hopkins, for an acoustic device, and No. 1,271,527, of same date, to same patentee, for a sound-regulating machine. On final hearing the court below dismissed the bill, whereupon this appeal was taken. In so deciding, the court said: "Lumiere device, patents 986,477 and 1,036,529, is undoubtedly a complete anticipation"—and whether it was right in so holding constitutes in our judgment the principal question in this case. These Hopkins patents were involved in two cases in the second circuit: Lektophone Corp. v. Sylo Lighting Fixture Co. (D. C.) 11 F.(2d) 421, where they were held valid and infringed; and Lektophone Corp. v. Western Elec. Co. (D. C.) 20 F.(2d) 150, where patent No. 1,271,529 was held valid and not infringed, and claims 29 and 30 of patent No. 1,271,527 were adjudged invalid. In the Circuit Court of Appeals (Lektophone Corp. v. Sylo Lighting Fixture Co., 16 F.[2d] 7 and 10) their validity was not passed on, the cases being determined on the issue of noninfringement. Reference to these cases precludes needless restatement of the general subject-matter.

[1] After full consideration, we have reached the conclusion that Hopkins patent, No. 1,271,529, was not anticipated by Lumiere or others, and that his patent is valid and infringed. Previous to the use of the now common cone sounding board, the horn was the usual mode of giving out sound. In this state of the art, Hopkins, who had a thorough musical and scientific training, took up at the request of Mr. Edison, and in his laboratory, the problem of finding out what could be done to improve the horn, and was so engaged for a year or more.

Without quoting at length the very interesting illuminating proof, it suffices to say that, after long experiments and study with the horn to ascertain just what its troubles were, and without finding any remedy, Hopkins' attention was directed to the sound boards used in musical instruments—the piano, violin, zither, guitar type, and the like—with the results that these were all found too heavy, and the minimum energy, which alone could be utilized, was dissipated in some other way than creating sound in the air. Finally "we got into paper in our seeking for lightness, paper structures, and arrived at the cone type, attempting to simply get lightness with the proper stiffness. Then we made a discovery that the cone not only gave us what would be expected of a physical structure having lightness and thickness,

but that it was a peculiarly formed thing for producing the very effect we were after. I say that was unexpected. * * * We found that it was a direct acting sound board surface of conical form, which is very stiff around its apex and had a gradual lessening of that stiffness toward the edge. Now, we mounted that in a support, which would permit it to do all of its vibrating in producing the sound, and at the same time keep it in the position that it was intended to be, and prevent the flimsier portions of the cone near the edges from breaking up or fluttering when we applied a reasonable amount of energy to it."

. The proofs satisfy us that the device of Hopkins was not a mere adaptation of existing contrivances, but came as an unexpected surprise at the end of earnest study of the subtle problems involved in this art. Of course, Hopkins is charged with notice of the earlier publication by Starling and Cole, which was published in London in 1907, in the talking machine art. This showed a conical shaped sounding board, but of such smaller size that it was considered a mere plaything, and left no impress on the art. But, even if its size had been increased, which in point of fact it was not, its edges would have fluttered or been subject to "weaving," which would have destroyed its efficiency when low notes were attempted to be given off. So, also, is he visited with notice as to the metallic sounding diaphragm used in confined space; but these threw no light upon Hopkins' problem. To our minds, Hopkins was the first to make the combination of a conical shaped paper device of proper size, provided with flexible edges coupled to a rigid frame used in free air. All of these three elements in free air, the light conical sounding board of specified area, the flexible edge, and the rigid frame combine to reproduce pure low notes. The device has come into general use, and its licensees are now supplying the public needs.

As we understand the action of the cone in free air, waves of different frequency are shed or emitted from the cone at various zones; that is to say, all the high-frequency waves pass off into the open air near the apex of the cone, and, as the waves become of lower frequency, they will not pass off except from the farther out edges of the cone. In order, therefore, to send out these waves of low frequency, the volume of sound must be increased, with the result that, as these low-frequency waves are emitted near the outer edges of the cone, its edges begin to weave or flutter, and set up an independent motion of their own. This is termed blasting, and is highly objectionable. Now it seems to us that Hopkins was the first to point out that this blasting effect, caused by the local vibrations at the edge of the cone, would be prevented and the cone held restricted to vibrations as a whole, and the weaving prevented, by the expedient of using a rigid frame and making a liaison between the edges of the cone and the clamp of the rigid frame by a flexible yielding liaison belt, which vented and thereby prevented the obnoxious fluttering of a cone's edges not rigidly held. By these means the cone was kept in place, and by reason of the flexible character of the liaison connection or belt the cone vibrated as a whole, and its outer edges did not vibrate locally. In this way the use of the added sound volume, which was necessary to carry low-frequency tones to the outer edge of the cone and there allow them to pass directly into the open or unconfined air, was made possible.

Such being Hopkins' disclosure, we next turn to the basic question on which the court below decided the case, namely, whether Hopkins' disclosure was anticipated by Lumiere in his patents, Nos. 986,477 and 1,036,529 of 1912. It is a significant fact that although Lumiere's device was adapted by such a strong company as the Victor, it has never passed into approving public use, and that company itself is using a cone which the General Electric Company make as licensee under Hopkins' patent. But, apart from Lumiere's patents having attained no position in the practical art, it is quite clear that he had no conception of that which constituted the gist of Hopkins' invention. Indeed, it seems to us that on final analysis Lumiere had in reality merely a flat sounding board. It is true he used paper, and has a construction which may be likened in some sense to a cone; but it seems to us the real plane of Lumiere is the central zone of his paper, for, while there is an edge around the apex made by the foldings or corrugations of his paper, and it can therefore be said that he has an outer edge of a dished or quasi conical shape, it is to be observed that there is a corresponding corrugation structure on the other side of his central or medium zone, and that the two exterior edges of his corrugations, front and back, are not really two individual side cones, but are unitary in reality and one structure, and that the real plane is the median flat horizontal one midway between the exterior side corrugations.

Moreover, making corrugations of this sort changes a fairly flexible plane into a

relatively stiff, unyielding structure. Indeed, it would seem that his corrugations were for structural or stiffening purposes, rather than for sound purposes. Moreover, the outer edge of Lumiere's paper corrugated structure is flattened and is clamped—and we venture to think as a continuation of his flat median surface—to the rigid structure which holds the cone in place. Lumiere, therefore, not having the flexible rim between his cone proper and his rigid support, his sounding board moves as a unitary structure from the edge of the restraining frame to the central part, while in Hopkins the cone moves as a whole, unrestrained and unlimited by the rigid frame. Tested by the standard of means and the product, the art never would have had a practical sounding board, had it stopped with Lumiere. It was Hopkins who gave a successful combination which produced low, clear tones on a conical sounding board in free air. For these reasons, we believe that the court below fell into error, and so far as patent No. 1,271,529 is concerned its decree should be reversed, and the cause remanded, with instructions to enter a decree holding the claims in issue valid and infringed.

Briefly stated, we find infringement on the part of the defendant. While the form of Hopkins' circular zone is not precisely duplicated by defendant's elongated oval board, yet in area and sound functioning it is appropriated and reproduced. By the defendant's flexible rubber liaison member, held in place by the rigid surrounding frame, weaving and fluttering of the outer edges of the sounding board are prevented, and the device as a whole produces the low clear tones of the Hopkins' device. Having thus appropriated in substance Hopkins' board, and produced thereby the sounds desired, the defendant seeks to escape infringement by placing over the functioning structure an ornamental hood, and thereby, as it contends, make the apparatus operate in confined air. The purpose of the hood to escape infringement, by using an outward and visible form to escape an inner and duplicating substance, is too clear to find lodgment in the minds of those who judge rights on the basis of substance rather than form.

[2] As to patent No. 1,271,527, we are in accord with the views of Judge Thacher in Lektophone v. Western, supra, which was adopted by the court below. In that respect the decree below will be affirmed. The costs here and in the court below will be apportioned, four-fifths in favor of plaintiff, and one-fifth for defendant.