## LEKTOPHONE CORPORATION v. ROLA CO.

District Court, N. D. California, S. D. July 17, 1928.

No. 1726.

1. **Patents ⧉328—No. 1,271,527, claims 29, 30, for sound-regulating machine, held invalid.**

Hopkins patent, No. 1,271,527, claims 29, 30, for a sound regulating machine, *held* invalid.

2. **Patents ⧉328—No. 1,271,529, for tympanum of acoustic device, held not infringed.**

Hopkins patent, No. 1,271,529, claims 1–8, relating to tympanum of acoustic device, *held* not infringed.

3. **Patents ⧉165(3)—Any ambiguity in applicant's claims requires construction against him and any broadening of claims.**

Any ambiguity in language of applicant's claims is construed against applicant and any broadening of claims.

4. **Patents ⧉154, 168(1)—Representations made to secure patents narrow grants, operate as disclaimers and limitations, and are binding on patentee.**

Representations by applicant, made to secure patents, narrow the grants, operate as disclaimers and limitations, are binding on applicant, and cannot be repudiated in his subsequent infringement suit.

5. **Patents ⧉327(17)—Judgment in patent infringement suit should not be changed for mere comity.**

Judgment in patent infringement suit should not be changed to conform to judgment of appellate court in another case, merely on the ground of comity.

In Equity. Patent infringement suit by the Lektophone Corporation against the Rola Company. Decree for defendant.

William K. White and Chas. M. Fryer, both of San Francisco, Cal., and Pennie, Davis, Marvin & Edmonds, of New York City, for plaintiff.

Gavin McNab, Nat Schmulowitz, C. M. Booth, Chas. E. Townsend, and William A. Loftus, all of San Francisco, Cal., for defendant.

BOURQUIN, District Judge. This suit is one of many to vindicate Hopkins' patents, Nos. 1,271,527 and 1,271,529. In reports

thereof, to which Lektophone Corporation v. Brandes Corporation (C. C. A.) 20 F.(2d) 155, opens the door, the description and details of the discovery and invention are sufficient, save some features material to the instant case.

[1, 2] The patents were granted July 2, 1918, on applications, original and divisional, filed July 14, 1913, and April 17, 1918. Involved herein are claims 29 and 30 of the first patent, and claims 1 to 8 of the second. The defenses are invalidity and noninfringement, and the decision is that claims 29 and 30 are invalid, the others not infringed.

Claims 29 and 30 are for application of leverage, to the end that the tympanum's vibrations or movements will be shorter than those of the style upon the record. The method is as old as Archimedes, its employment in infinite variety preceded Hopkins, and his use of it was analogous, mechanical, aggregation rather than combination, and not invention. See Concrete Co. v. Gomery, 269 U. S. 177, 46 S. Ct. 42, 70 L. Ed. 222; Concrete, etc., Co. v. R. C. Storrie & Co. (D. C.) 23 F.(2d) 134. Moreover, Brown (British, 29,833), if not Lumire (986,477), had made use of the method in the prior art. And, even as here, these claims have been held invalid. See Lektophone Corp. v. Brandes Corporation (C. C. A.) 20 F.(2d) 157.

Claims 1 to 8 are for the tympanum of the patents, claims 1, 2, 3, 5, 6, and 7 for a tympanum "having a free area exceeding nine inches in diameter," and claims 4 and 8, for one having "sufficient area" to realize the invention. In his specifications, and during proceedings prior to patents, Hopkins committed himself to the theory that a tympanum exceeding nine inches in diameter alone would function, was necessary, and was his discovery and invention. Accordingly all claims are so taken. Likewise did he commit himself to a tympanum necessarily made of a particular kind of material and construction, though not incorporated in any of these claims. And because, in these particulars of diameter, material, and construction, defendant's tympanum or device substantially departs from plaintiff's, there is no infringement.

The specifications are for improvements in sound-regenerating devices, by substitution of a "tympanum of novel construction" for the sound box and horn in common use, wherein the virtues of the former and the vices of the latter are detailed. In description the tympanum is a hollow open cone and a surrounding flat rim at right angles to the axis, the outer edge of which rim is "tightly gripped and rigidly supported between" two metal rings.

The specifications state that, "if satisfactory regeneration of sounds is to be had, the whole diameter of the tympanum" between the supporting rings "should exceed nine inches, in order that the conditions shall be fulfilled which are required to regenerate the sound waves"; that the diameter of the base of the cone "should exceed in area one-half the effective area of the entire tympanum, * * * or in other words * * * should be at least eight-tenths" of the diameter of the tympanum, and the height of the cone should be "at least one-quarter of the diameter of its base"; that "it is, of course, possible to make some variation from the approximate sizes given without materially altering the result, but, if the tympanum is made as shown in the drawings, any great variation from these proportions will be found to affect the character of the reproduction"; that smooth surfaces and the form shown in the drawings are preferred, "yet it is possible" to form radial corrugations in the cone and radial or concentric corrugations in the flat rim, whereupon "it is possible some variation from the proportions above given may be found possible, and perhaps advisable, but such variations from the proportions given will not be great"; that the tympanum is of "light vibratile material," and "preferably of a collodial substance" of thickness "according to the crispness or stiff character of the material used. Compressed fibrous material, such as hot pressed paper or fiber, has been found to act satisfactorily"; that "it is of vital importance that the tympanum be made of crisp, strong material having considerable rigidity within itself"; that a conical shape is given the tympanum, "so that shocks or vibrations impressed upon the apex of the cone in a direction toward its base will move the whole cone bodily," precluding wave motions therein; that the vibrations or shocks "are to be applied to the tympanum as a whole, * * * to insure the movement of the tympanum as a whole"; that otherwise the "paper or hard rubber" tympanum "would be distorted, * * * the effect of the shock upon the tympanum as a whole being entirely lost"; that the flat rim "maintains the place of the conical active portion of the tympanum," permits required motion of the cone, but "resisting its displacement in just that degree necessary to maintain the form and neutral position of the active conical portion"; that considerably greater width of this rim, or marked narrowing, would destroy

its function "to a degree corresponding to its departure from the approximate proportion given, and the effective portion of the conical portion of the tympanum would be proportionally lessened"; that, by reason of leverage, "the length of vibration of the tympanum is relatively much less than that of the style," thus reducing wear of the record, and the resultant small movement of the tympanum is compensated, for that "its large area enables it to move a large body of air, so as to obtain sound waves of large volume and great carrying power."

By the file wrappers by plaintiff presented it appears there was prolonged controversy between the applicant and the Patent Office, wherein were repeated rejections of the claims for a tympanum "exceeding nine inches in diameter," because size is not patentable, unless material to the result. To this the applicant responded "that the size of the tympanum is what enables it to effect direct regeneration of the sound; * * * a light, vibratile tympanum of substantially nine inches in diameter or greater must be employed in order to obtain faithful reproductions"; that the size in excess of nine inches in diameter is "essential," and "has been demonstrated by the applicant by actual trial"; that the "selection of the particular dimensions is of the essence of the invention, and attains novel results arising from the particular dimensions," as applicant would and did demonstrate to the Examiner; that "it is essential to the success of applicant's machine that the tympanum be of large area, and that the base of the vibratile portion thereof exceed nine inches in diameter"; that these are "definitions of the essential characteristics of the invention"; and that he has "demonstrated that his invention is not wholly satisfactory, when the conical tympanum is made with a basal diameter of less than nine inches." Thereupon the Examiner yielded and the claims were allowed accordingly.

In so far as the specifications state that it is "possible" to vary the "approximate sizes given," it is believed the reference may be to the maximum diameter of the tympanum and is to the *proportions between* diameter of the cone, its height, and diameter of the flat rim, their *relation* to each other, and not at all to lessen the diameter of the tympanum.

For the suggested possibility is followed by the warning that, if the tympanum of the drawings be employed, "any great variation from these proportions" (that is, size in relation one to others, but not of the tympanum as a whole) will result unsatisfactorily. The same distinction is employed in reference to variation of proportions if the tympanum be corrugated. And only such variation will be, as it must be, "within the scope of the claims." See Minerals Separation v. Butte & Superior Mining Co., 250 U. S. 341, 39 S. Ct. 496, 63 L. Ed. 1019.

[3] If any ambiguity in applicant's language, the construction is against him and any broadening of the claims. All this is confirmed by permissible resort to the file wrapper by plaintiff presented. See Goodyear Co. v. Davis, 102 U. S. 227, 26 L. Ed. 149; I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 444, 47 S. Ct. 136, 71 L. Ed. 335.

[4] To avoid rejection and to secure allowance of claims for a tympanum represented to be necessarily in excess of nine inches in minimum diameter, Hopkins represented, insisted, and demonstrated the necessity, that therein was his discovery and invention, that it was of the essence and essential to success, was what enabled direct regeneration of sounds, must be employed, attains novel results, and was an essential characteristic of his invention. Representations in these circumstances, made to secure patents, narrow the grants, operate as disclaimers and limitations, and as such are to be given effect. Made then, they cannot be repudiated now. See Holland, etc., Co. v. Perkins Glue Co. (May 14, 1928) 48 S. Ct. 474, 72 L. Ed. ——; I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 444, 47 S. Ct. 136, 71 L. Ed. 335; Minerals Separation Case, 250 U. S. 336, 39 S. Ct. 496, 63 L. Ed. 1019; Wright v. Yuengling, 155 U. S. 52, 15 S. Ct. 1, 39 L. Ed. 64; White v. Dunbar, 119 U. S. 47, 7 S. Ct. 72, 30 L. Ed. 303; Sargent v. Hall Safe & Lock Co., 114 U. S. 86, 5 S. Ct. 1021, 29 L. Ed. 67; Mahn v. Harwood, 112 U. S. 361, 5 S. Ct. 174, 6 S. Ct. 451, 28 L. Ed. 665.

Hopkins taught that only tympanums exceeding 9 inches would function, in consequence of which all the field below that figure was left open to other experimenters, discoverers, inventors. He made a particular size material. As defendant's tympanum is only 8$\frac{7}{16}$ inches in diameter, a size not discovered or invented, and denied and disclaimed by Hopkins, a size not taught by his patents, it does not infringe. Moreover, Hopkins also made a particular kind of material and construction material to his invention, and to them the patents are limited. He described his tympanum as necessarily made throughout of crisp, vibratile material of considerable rigidity, as paper, fiber, hard

rubber, to vibrate effectively throughout. The specifications stipulate that the cone shall "exceed in area one-half of the *effective* area of the entire tympanum," and the vibrations of the flat rim with something less than half the total area, undoubtedly materially contribute to the regeneration of sound.

In defendant's device only the cone is of crisp vibratile material, the flat rim being of limp kid, and the former alone effectively vibrates. The material of the one differs from that of the other, as do things differing in nature.

Hopkins discovered and invented the one, but not the other, and his patents teach that the first is vital to success, and that the second spells failure. Difference in material results in relatively great difference in size; for whereas, the diameter of the "effective area" of plaintiff's tympanum exceeds 9 inches, that of defendant's is but 7 inches, the area of the first being 66 per cent. more than the area of the second. To this element of material and construction is applicable the foregoing comment and citations in respect to the element of size.

In so far as it is urged that the flat rim is but a flexible hinge and that defendant's is an equivalent, the answer is that the patents do not so limit its function, do limit the nature of the material, and that, at the time of the patents it not being known that with a flat rim of limp material the tympanum would function, the principle of equivalents does not apply. See Imhaeuser v. Buerk, 101 U. S. 656, 25 L. Ed. 945; Rowell v. Lindsay, 113 U. S. 102, 5 S. Ct. 507, 28 L. Ed. 906.

[5] True, in Lektophone Corporation v. Brandes Corporation, 20 F.(2d) 155, the Circuit Court of Appeals for the Third Circuit held that a flat rim of perhaps soft rubber infringes, apparently upon the principle of equivalents. But the court took no note of the facts that the specifications declare crisp material throughout to be vital (necessary, that on which success depends), limit the nature of the material, attach necessity to its inherent qualities and attributes, do not limit the function, and that when the patents were granted the sufficiency of limp material was unknown. If otherwise alike, that case and this differ in judgment, which suffices to forbid conformity merely to comply with the rule of comity urged.

Too often is the rule invoked to extend the operation of erroneous decisions, and to defeat review by the Supreme Court, or for the sake of appearances and face-saving. Justice is more than these latter—is the substance whereof they are the shadows sometime distorted. To change judgment out of mere comity is perversion of judicial function and defeat of justice. And yet it is done whenever the facts and findings in one patent case are taken into account in another, to the prejudice of a party in the latter who is a stranger to the former. See Carson, etc., Co. v. Anaconda Copper Mining Co. (D. C.) 17 F.(2d) 816; Id. (C. C. A.) 26 F.(2d) 651. For this judicial rule, peculiar to patent cases tried in equity, is no justification in principle.

None of the eight claims of the second patent having been infringed, the issue of validity need not be and is not determined. It is observed, however, that at best these patents are combinations of what was old in the art, and effect little, if anything, more than difference in degree; that is, increased volume or loudness by increased capacity or area. They are somewhat analogous to a patent for a 50-gallon barrel by the inventor, discovered possible in a world of 5-gallon kegs, hardly invention, even when the first time made (always is a first time, however obvious and mechanical), and though extensively used.

Hopkins' tympanum differs nothing from Brown's (British, 29,833), Stroh's (British, 3,393), and Dann and Lapp's (338,660), and little from English's (1,192,289), save in point of size and consequent volume, and Brown had taught, if the obvious needs teaching, that increase in size would increase volume or loudness. This had actually been done by Starling and Carr (Talking Machine News, July, 1907), and plaintiff's tympanum is theirs supplied with the rim and support of the others. Lumire, too (1,036,529), whose device is many quasi cones, expressly taught increased size, torsion, avoidance of nodes, and vibration as a whole by shock to the apex of the cone.

It would seem that the original thought or purpose of a crowded art, to reproduce sounds more or less loudly, was carried forward by Hopkins in the same way, by substantially the same means, though by increased size, to corresponding increased results. That some of the analogous devices of the prior art were transmitters, and not receivers, is immaterial, for any learned in the art knew that, with some adjustment, either would serve for the other. Such change is not invention. See Western Electric Co. v. La Rue, 139 U. S. 605, 11 S. Ct. 670, 35 L. Ed. 294.

Decree for defendant.