## LEKTOPHONE CORPORATION v. ROLA CO.

Circuit. Court of Appeals, Ninth Circuit.
September 23, 1929.

No. 5712.

William H. Davis and Vernon T. Houghton, both of New York City, and Chas. M. Fryer, of San Francisco, Cal., for appellant.

Chas. E. Townsend and Wm. A. Loftus, both of San Francisco, Cal., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

WILBUR, Circuit Judge. The appellant, being the owner and assignee of patents Nos. 1,271,529 and 1,271,527, issued to Marcus C. Hopkins, July 2, 1918, upon applications filed July 14, 1913, claims that these patents, and particularly claims 1 to 8, inclusive, of the former, and 29 and 30 of the latter, are infringed by a radio loud speaker manufactured by the appellee, and seeks the usual remedies, which were denied in the lower court.

The Hopkins patents were of sound-reproducing instruments for phonographs. The vibrating and sound-reproducing element, styled by the patentee a tympanum, was in form a plane annulus, from which projected a right cone, with axis perpendicular to the plane of the annulus. As stated in the patent: "The whole diameter of the tympanum * * * should exceed nine inches, in order that the conditions required to regenerate the sound waves in the manner above described shall be fulfilled. The case of the central conical portion 1 should exceed in area one-half of the effective area of the entire tympanum; * * * in other words, the diameter of the base of said conical portion should be at least eight-tenths of the diameter of said aperture. The altitude of the conical portion 1 should be at least one-quarter of the diameter of its base."

The vibrations of the needle or stylus of the phonograph were imparted to the apex of the cone by a system of levers, which reduced the amplitude of the vibrations about one-half, but did not affect the number thereof. "It is of vital importance," the patent states, "that the tympanum be made of crisp, strong material, having considerable rigidity within itself, and it is also of vital importance that the tympanum as a whole be ex-

tremely light, and have as little inertia as possible, without a weakening effect." The patent points out that the purpose of the conical form is to give sufficient rigidity in the direction of the base, so that it would move bodily without wave motions being set up in the cone itself. "While I prefer," says the patent, "to construct the tympanum in the form described and shown with a smooth surface, especially in view of the ease of construction, yet it is possible to form radial or concentric corrugations in the plane peripheral portion, and produce a light, stiff, and very satisfactory article for the purpose. It is conceivable, too, that when the tympanum is provided with corrugations as just suggested some variation from the proportions above given may be made, but such variations will not be great."

The method of connecting the phonographic needle to the apex of the cone, by levers which reduce the amplitude of the vibration and to the same extent increase the power, is also involved in this litigation, being covered by claims 29 and 30, above mentioned. We will defer the discussion of these claims until after disposition of the other questions.

As the matter of size and dimensions are important in connection with the prior art and the size of the alleged infringing diaphragm, as will presently appear, we now quote from the file wrapper of the patent a letter addressed by the applicant's attorneys to the Commissioner of Patents December 5, 1913, as follows: "With reference to claim 17, which specifies a tympanum exceeding nine inches in diameter, it is submitted that the size of the tympanum is what enables it to effect direct regeneration of the sound. When a horn is employed for transferring high-tension disturbances, the size of the tympanum is immaterial. Applicant has practically demonstrated that, to effect direct regeneration from the records of the sounds, a light vibratile tympanum of substantially nine inches in diameter, or greater, must be employed, to obtain faithful reproductions." This was in response to a letter from the Patent Examiner to the attorneys as follows: "Claim 17 is rejected on Kraemer (890,142). The size of the diaphragm is not a patentable limitation."

The defenses interposed by appellee are no invention and no infringement. The appellee's device, the Rola radio loud speaker, also has as a central conical portion a paper cone, but the rim or annulus is of soft kid leather. The paper cone is 7⁹⁄₁₆ inches, and the outer circumference of the movable portion of the annulus, or rim, is 9¹¹⁄₁₆ inches.

These dimensions are important, as will shortly appear.

### The Cone.

The claims of the Hopkins patent for an "acoustic device" (1,217,529) are based primarily upon the proposition that a new method of propagation of self-sustaining sound waves without the intervention of a horn had been discovered. It is explained in the appellant's brief that the sound box and horn method of reproduction of sounds depends upon the vibration of a small diaphragm constituting one wall of a casing called a sound box, which vibrates in the confined air in the sound box and sets up sound waves or impulses of high pressure and small area; that these waves or impulses cannot travel through the air to the ear of the listener, and there accurately reproduce the original sounds without modification; and that the horn attached to the sound box is for the purpose of reducing the pressure and extending the area of these sound box impulses, while, on the other hand, the inventor claims that his device reproduces these large area, low pressure sound waves, without any horn, directly by the vibration of the above-described tympanum, "and in this manner eliminates phonograph and horn sounds." Such an invention was a notable achievement in the art of reproducing sound, while the trumpet, bugle, horn, on the one hand, and the cymbal, on the other, would seem to carry back to remote history these two methods of sound production, as distinguished from reproduction.

In sound-reproducing instruments, where the vibrations are produced mechanically, as a new sort of echo of sounds made by other instruments or methods, and at other times, the method of Hopkins, for producing sound waves of large area and low pressure, so far as it involves a large paper cone, is clearly anticipated by a sound-reproducing device discovered and described by Sydney G. Starling, B. Sc., A. R. C. Sc., F. Phys. S., and W. Cole, F. L. S., in the Talking Machine News of London, England, of July, 1907, under the title, "The 'Vibratophone': A New Phonograph." The purpose of Starling and Cole, as stated by them, was as follows: "Our object, in the first place, was to produce a diaphragm which would be large and rigid enough to set sufficient air in vibration to product audibility without the aid of a trumpet. Our paper cone must be looked upon as a modified diaphragm, and not in any sense a trumpet." Their right cone was specified in the drawings as about 8 inches in diameter at the base, with an altitude of about 2½ inches. It will be noted that these dimensions of base

and altitude are slightly larger than the minimum for the appellant's cone, whose base was 7.2 inches (eight-tenths of 9 inches), and corresponding altitude one-fourth of 7.2, or 1.8, inches. For a cone of 8 inches, appellant's corresponding altitude would be one-fourth thereof, or 2 inches.

Appellant says of the Hopkins patent that: "The stated object of this patent is the direct propagation of sound waves of correct intensity, amplitude, pitch, and timbre on free air, as distinguished from indirect reproductions of sound by means of a 're-producer or sound box and the horn' commonly used for sound production. The device of Starling and Cole, a rigid and thin paper cone of 'cartridge drawing paper' vibrating with the phonograph needle or stylus, by the transmission of the vibrations of the stylus to the apex of the cone was a workable device for a phonograph and can be used as a radio loud speaker, but has the defect of blasting on certain lengths of sound waves, particularly where used with the relatively high power available in the radio art. This anticipation of the Hopkins patent would seem to eliminate his claims of prior discovery, so far as the conical part of tympanum is concerned, and also so far as his claims are based upon a new and important discovery in the art of sound reproduction, by utilizing a diaphragm acting directly on free air to produce self-sustaining sound waves, as distinguished from those produced in a closed sound box and amplified by a horn."

Aside from the pure echo, the art of sound reproduction, in modern times, first attained important significance in the telegraph, then the telephone, then the phonograph, and now the radio. The appellant seeks to gain the advantage of the application of his invention of a sound-reproducing device, intended primarily for the phonograph, to the new art of radio reproduction of sound. It is proper that it should do so, if its claims can be substantiated. It is, however, to be noted that the prior art of sound reproduction, as developed in the telegraphic or telephonic art, is also available to the radio engineer and inventor. The radio engineer, in his efforts for faithful sound reproduction, has at his command something entirely new to the art of sound reproduction as developed in the phonographic art; that is to say, relatively unlimited power. It is obvious that this asset in radio engineering may make it possible to utilize smaller diaphragms for the purpose of producing self-sustaining sound waves in free air, and hence make available patents and principles utilized in the art of sound reproduction before the Hopkins dis-

covery appeared in this already greatly crowded field.

The evidence in this case discloses that this can be done. Several loud speakers, each constructed in accordance with a patent issued for telephonic or telegraphic or phonographic reproducing devices, each with a diaphragm smaller than the dimensions of the Hopkins diaphragm, all prior in the art to the Hopkins patents in suit, were demonstrated before the trial court as radio loud speakers. The Maxwell device, hereinafter discribed, proved superior to the appellant's device. Neither the appellant's device, nor the appellee's without the addition of a baffle, satisfactorily covered the range of sound vibration used in radio broadcasting of from 100 to 5,000 cycles. The appellee's device, without a baffle, was unsuccessful below 250 cycles. The test showed that the Hopkins device, constructed according to his patents, "rattled and blasted" at some frequencies below 8,000, although the exact point where such effects appeared is not made clear by the evidence, while the appellee's device, without a baffle and with its construction of a soft kid annulus, with a felt welt to prevent the free passage of the air from back to front of the cone, did not "blast" up to 8,000 cycles.

If these prior inventions are applicable to the new art, and are diaphragms, vibrating in free air, and producing self-sustaining sound waves, without the aid of horn or trumpet, how would the appellant escape the claim that he had infringed these earlier patents, if they were still in force, when he sought to invade this new field, or art, with his later device, where their earlier devices accomplish exactly what he claims to do and in the same manner? If he were first in this field with his invention, how could these earlier devices, if later, instead of earlier, escape his claim of infringement?

"That which infringes, if later, would anticipate, if earlier." Knapp v. Morss, 150 U. S. 221, 228, 14 S. Ct. 81, 84, 37 L. Ed. 1059, citing Peters v. Active Mfg. Co., 129 U. S. 530, 537, 9 S. Ct. 389, 32 L. Ed. 738; Thatcher Heating Co. v. Burtis, 121 U. S. 286, 295, 7 S. Ct. 1034, 30 L. Ed. 942; Grant v. Walter, 148 U. S. 547, 554, 13 S. Ct. 699, 37 L. Ed. 552; Gordon v. Warder, 150 U. S. 47, 14 S. Ct. 32, 37 L. Ed. 992; Lektophone Corp. v. Brandes Products Corp. (D. C.) 16 F.(2d) 934, 935. The point is that in the new art the dimensions of the cone part of the diaphragm, or of the diaphragm itself, are relatively unimportant, and that this fact must be given due weight in determining the adaptability of the prior art to the new art. Appellant's patent is based on his repre-

sentation therein, and on the representations of his attorney, that in the propagation of self-sustaining sound waves from a phonographic record by a vibrating diaphragm, without the aid of a horn or trumpet, the size and dimensions are of the essence of the invention. Apparently this is not true in the radio art. The Rola cone, according to these representations of Hopkins, is too small to operate as a phonographic loud speaker, as the Hopkins device is claimed to do; and it required amplifying devices, increasing its power, and also a baffle and other devices to prevent sound interference, in order to operate successfully in the radio field.

### The Annulus.

Before discussing the prior art of sound reproduction further, we will consider an important phase of the appellant's contentions, based upon his method of connecting the cone to the stationary ring by an annulus of the same material as the cone, constituting an integral part of the tympanum. The cone of Starling and Cole loud speaker was free at the base. The appellant places great stress upon the annulus, and upon its being firmly secured to a rigid rim of metal, as distinguishing his device from theirs. It seems that, when a cone of thin paper with a free base, such as Starling and Cole invented or proposed, is violently vibrated to reproduce sounds, on certain pitches—that is, with a certain number of vibrations—the free edge of the cone ceases to vibrate bodily with the balance of the cone. Its vibrating edge divides itself into nodes and loops; the nodes are the stationary points, and the loops the portion where the edge vibrates between these stationary points. This causes the cone to produce sounds of its own on certain pitches, as well as to reproduce sound, and when used as a radio loud speaker causes sharp and unpleasant sounds, known as "blasting," to intermingle unpleasantly with the music, or voice, or sound being reproduced.

It is claimed that the Hopkins form of tympanum, a cone with an annulus at its base, fixed in place at its outer edge, obviates this difficulty, and the evidence shows that it does so to some extent, and that the appellee's loud speaker, by its method of securing the edge of the cone to the fixed frame by limp leather, produces the same result, and therefore infringes this feature of the patent. Appellee's theory on the other hand, is that this limp leather connection between its cone and annular metal rim entirely distinguishes it from the appellant's method of making connection thereto, by an integral part of his

sounding device or tympanum. This distinction would seem to be well taken, so far as sound-generating properties are concerned, but upon the question of the prevention of "blasting" might be deemed an equivalent of the annulus of appellant's patent, and this point we will now consider.

In that connection it should be noted that Hopkins' patent says nothing of the blasting effect, due to the vibration of a paper cone with a free edge. Nor is any claim made upon that point. Nor is it at all clear that the inventor had this point seriously in mind, although he does testify that in his experiments he noted this difficulty with a free edged cone.

On this branch of the subject, two points are of importance: First, the rights of an inventor to accidental and unanticipated results of his invention; and, second, the state of the prior art, as to anticipation on this matter of "blasting," for most of the prior patents presented in evidence were for a cone with edges firmly secured to a surrounding diaphragm, thus doing away with "blasting," so far as it can be done, by firmly securing the edge of the annulus. "Doubtless, a patentee is entitled to every use of which his invention is susceptible, whether such use be known or unknown to him." Potts v. Creager, 155 U. S. 597, 606, 15 S. Ct. 194, 198, 39 L. Ed. 275. "An inventor is not called upon to state in his specifications or claims * * * all the uses to which his invention may be put. When he has plainly described and claimed his machine or combination, and has secured a patent for it, he has the right to every use to which his device can be applied, and to every way in which it can be utilized to perform its function, whether or not he was aware of all these uses or methods or use when he claimed and secured his monopoly." American Cone & Wafer Co. v. Denaro (C. C. A.) 297 F. 913, 916, citing Roberts v. Ryer, 91 U. S. 150, 23 L. Ed. 267; Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121.

These principles, applied to the facts of this case, would import into this new radio art prior patents, as well as the Hopkins patent, applicable to sound reproduction therein, from the prior arts of phonographic and telephonic sound reproduction, and would apply with equal force to all other such devices, whether patented or not, used in the art of sound reproduction. If the device of the appellant was an invention of a means of preventing "blasting," resulting from a conical vibrating element

with free edges, it was anticipated by prior patents, which will be shortly discussed.

The question of accidental or incidental discoveries is considered in a recent and difficult case by the Supreme Court; Chief Justice Taft writing the opinion. Eibel Process Co. v. Paper Co., 261 U. S. 45, at page 66, 43 S. Ct. 322, 329, 67 L. Ed. 523. There the patent was granted Eibel for an improvement in the Fourdinier paper-making machine, which consisted solely in elevating the receiving end of the paper-making wire about 12 inches, to speed up the flow of the pulp to an equality with that of the paper-making wire, and thus greatly increasing the output of the machine. Barrett and Horn had received a patent for elevating the breast roll and the paper-making wire three inches, for the purpose of hastening the drainage of the water content of the pulp that flows on the wire, constituting between 135 and 200 times the weight of the commingled paper-making fibers of the wood pulp. The opinion thus states the contention and the answer thereto: "It is contended on behalf of the defendant that, whether Barrett and Horne perceived the advantage of speeding up the stock to an equality with the wire, yet the necessary effect of their devices was to achieve that result, and therefore their machine anticipated Eibel. In the first place, we find no evidence that any pitch of the wire, used before Eibel, had brought about such a result as that sought by him; and, in the second place, if it had done so under usual conditions, accidental results, not intended and not appreciated, do not constitute anticipation"—citing Tilghman v. Proctor, 102 U. S. 707, 711, 26 L. Ed. 279; Pittsburgh Reduction Co. v. Cowles Electric Co. (C. C.) 55 F. 301, 307; Andrews v. Carman, Fed. Cas. No. 371, 13 Blatchf. 307, 323. It was therefore held that the previous adoption of a comparatively slight pitch of the screen, but for another and distinct purpose, did not constitute anticipation of the Eibel invention.

Judge Coxe in an opinion of the Circuit Court of Appeals, Second Circuit, applied this principle to an alleged anticipation by Hammond's patent of an improvement by Hillard of a typewriter: "Assuming Hillard's improvement to be present in the machine in evidence, it is difficult to believe that Hammond had an intelligent conception of the invention and failed to make the slightest allusion to it in his patent. If the new function existed in the machines made under the patent, and this is vehemently disputed, it was accidental, unrecognized by the patentee, and no disclosure thereof made to the public." It was held, on the authority of Tilghman v. Proctor, 102 U. S. 707, 26 L. Ed. 279, supra, not to anticipate Hillard's improvement. Hillard v. Fisher Book Typewriter Co., 159 F. 439, 441.

From these authorities it would seem to follow that Hopkins' invention did not cover the prevention of blasting effect, due to the use of a free cone like Starling and Cole. But it is enough for the purposes of this decision to say that, if Hopkins' patent did cover this accidental and incidental result of remedying a defect of slight importance in the phonographic art and of vast importance in the radio art, because of the increased power available, such result was just as clearly anticipated by prior patents, and consequently the claims of the patentee in this suit, that the leather annulus of the appellee's device infringes the paper annulus of his patent, because it prevents blasting, cannot be sustained on that ground.

We will now refer to some of these prior patents. The first patent we will consider is that to Lumiere for an acoustical instrument, applied for June 30, 1909, and issued March 14, 1911, for sound reproduction. The object of the invention, as stated in the patent, was "to provide a diaphragm and a mounting therefor, by means of which sounds may be faithfully recorded and reproduced, which will be sensitive to sound waves, and by the use of which the reproduction of sound will be improved and amplified." Among other things, it was "to increase the active surface of a diaphragm of a certain given diameter, to increase the diameter of the diaphragm without making it liable to vibrate in parts, or to *set up nodes or inactive portions in the diaphragm* (italics ours), or, in other words, to substantially increase the size of the diaphragm and, at the same time, have it vibrate throughout. * * *" It is found that the effect of bringing the surfaces of the vibrating body into a condition of molecular stress by torsion is to reduce by a minimum the tendency of the vibrating body to form nodes during operation, so that the surface or surfaces of the diaphragm will vibrate as a whole, and will not produce the disagreeable effect which is technically known as blasting or shattering." Thus it will be observed the inventor recognizes and attempts to overcome "blasting."

The diaphragm is securely fastened to an outer metallic rim. The surface of the

diaphragm is not flat, but is a "fan-like series of radially disposed ridges and furrows, the ridges on one side of the diaphragm, corresponding to the furrows on the other side of the diaphragm, and the furrows gradually widening out and becoming less deep as they approach the edge of the diaphragm, until at its perimeter the diaphragm lies in one plane." The form of the diaphragm might be described as a right cone, with an altitude equal to the depth of the furrow, about a half inch, containing about 36 ridges; each crest of a ridge, being a generator of the flat cone, lies in the surface of the cone, with the paper between these ridges projecting downward until the bottom of the "furrow" touches the base of the cone; in other words, the ridges are in the plane of the surface of the cone, and the bottom of the furrows are in the plane of the base of the cone.

The patentee comments on the diameter of his cone or diaphragm as follows: "Moreover, a diaphragm constructed in the manner above described can be usefully made of considerably greater diameter than has heretofore been possible. Experience has seemed to prove that a plane diaphragm of mica, or other material, such as is used at the present day, if made of more than about 3½ inches in diameter, loses in quality of reproduction; the reproduction becoming less musical, and there being a liability to what is technically known as shattering, due probably to the diaphragm not vibrating as a whole—i. e., the setting up of nodes in the diaphragm. I have found, however, that I am able to make a diaphragm according to the present invention as large as 10 inches or more in diameter, without impairing the quality of the reproduction, and by means of this diaphragm at the same time obtain a much greater volume of sound than with the smaller diaphragm."

This amplification of sound, which the patentee states in his patent he believes to be due to the increased diameter and surface of the diaphragm constructed as above described, is such that the "volume of sound produced is sufficient to enable me *to dispense with the usual amplifying horn,* and in this way much of the metallic and hollow character usually associated with talking-machine reproduction is eliminated." "Diaphragms may be made according to this invention of any suitable elastic material, such as paper (which may be varnished, if desired), card, celluloid, metal, or the like, and the surface or surfaces of the dia-

phragm may be put under tension by any suitable means."

While the appearance of the appellant's device is quite dissimilar from that of Lumiere, the general principles of both would seem to be the same. Lumiere gets uniform vibration and large surface by tension and by fluting the paper diaphragm, and Hopkins gets both, as does Starling and Cole, by increasing the altitude of the cone. We use the phrase "cone," as applied to Lumiere's device, not to emphasize a geometrical similarity between the two devices, although that is important, but to properly describe the tapering effect of his construction, and its relation to the plane at the perimeter into which ridges and furrows are flattened out. The pleating gives strength in the direction of the application of the vibrations, which is achieved by Hopkins by greater altitude of the cone. The Victor Talking Machine Company manufactured and sold about 40,000 of these Lumiere diaphragms. In the above quotations from Hopkins' patent, it will be observed that he speaks of a corrugated cone, and he might with equal accuracy have referred to a fluted cone as the equivalent of his uniform surface cone.

The Lumiere device presents the idea of a diaphragm of large surface generating a self-propagating sound wave, attached to a rigid frame. This device was operated at the trial as a radio loud speaker.

The Dann and Lapp patent, No. 338,660, issued March 23, 1886, for a telephone transmitter, called for a plane diaphragm with a central conical portion. The plane portion attached to a rigid structure, with a four-inch central cone, the device described in this patent was operated successfully at the trial to produce self-sustaining sound waves. The Dann and Lapp patent has all the elements of the diaphragm or tympanum of the Hopkins patent, although the plane portion of the diaphragm is square, instead of an annulus. If the material is changed to paper, and the diameter of the cone increased in accordance with the teaching of Starling and Cole, we have the device of Hopkins in substance, and almost duplicated in construction. Dann and Lapp do not confine their claims to transmitters, but claim any other function to which it is applicable in the art of telephony, probably referring to receivers.

The Maxwell patent, No. 216,051, of June 3, 1879, applied for November 7, 1878, for a telephone receiver or transmitter with a sounding board of soft pine wood, or other suitable material, with a circular opening

covered by a funnel-shaped piece of sheep-skin "or like material." The cone of eight-inch base; as the patent states: "I have also found by experiment that a vibrator that is from 7 to 8 inches in diameter through the center from one outer edge to another is the most efficient, and that when they are much smaller than this the vibrations made by the vocal organs are of a nasal character," etc. These diaphragms are fastened to and upon the opposite side of a thin board of soft pine or other vibrating material. It is sufficient for our present purposes to note that the conical sheepskin diaphragm is only a part of the vibrating element, the balance being the thin board to which it is attached.

An apparatus such as is described in the Maxwell patent, with a single cone, and another with two cones apex to apex, as therein described, were constructed and successfully operated as radio loud speakers at the trial.

In 1898 J. H. Rogers patented, No. 599,-867, a telephone transmitter of the conical sounding board type, secured to the vibrating electrode at its apex, with the mouth of the cone turned either toward or away from the electrode, as desired. This conical sounding board he calls a target. Of it the patent states: "The target or sounding board is by preference made of some thin, light material, which is not detrimentally affected in any way by moisture. Celluloid has been used for this purpose, but other similar light, elastic substances will do as well." The patent states the cone form to be preferable, saying: "It is believed that the conical form is most efficient, because of not having any particular tone of its own, but being capable, because of its gradual diameters, to respond to any and all tones." It is therein also stated "that the sounding board may be made of any desired size." Here we have a free conical sounding board, operating to vibrate a magnet at its apex in response to sound waves, and thus set up vibrations in an electric current. Reversed as a transmitter, it presents a thin vibrating conical sounding board of any desired size, operating in free air in response to fluctuating power applied at its apex.

The British Patent Office in 1911 granted to Sidney George Brown, an electrical engineer, a sound-reproducing device with a diaphragm very similar to that proposed by Hopkins, as some quotations therefrom will show, although, be it said, the dimensions of the diaphragm are not specified, and it is proposed to use it in the usual sound box of a phonograph or gramophone presumably with the usual horn attachment.

"In the ordinary sound box," the patent to Brown states, "arrangements of gramophones and the like, one end of the stylus bar or lever is attached to the center of the diaphragm, and the latter is gripped peripherally, with the result that, since it is not absolutely free to vibrate freely at all points on its surface, its responsiveness to vibratory influences is very far from being efficient. Moreover, it is usually comparatively heavy, with the result that its inertia makes it sluggish in action.

"With a view to removing some of the constraint put upon the diaphragm by reason of its periphical mounting, it has been proposed to form it with a conical center portion and a resilient flange portion, so that the conical center portion, the apex of which is secured to the stylus bar or lever, may vibrate as a whole; in such a construction, however, the dampening and constraining action of the flange portion is in my opinion too great to insure acoustical efficiency. It has also been proposed to transmit the vibrations of the stylus bar to the conical diaphram through a connecting rod, and to mount the diaphragm peripherally by a flexible mounting of a folding character, such as gold beaters' skin, to insure a movement of the diaphragm as a whole."

He holds that the mounting should be at the apex of the cone, and that the periphery must either be entirely free, or be connected to the casing or other stationary part by material so light and thin that no appreciable peripheral restraint is exercised. He thus leaves the cone either free or connected to the casing by "a ring of resilient material of extreme thinness," considerably thinner than the periphery of the conical diaphragm. The conical diaphragm he forms of thin aluminum or aluminum alloy of an average thickness of 2½ thousandths of an inch; for the ring or annulus he suggests "extremely thin resilient material, such as glazed tissue paper one three-thousandths of an inch thick, or thin collodion film. The width of the annular space must be either so small that the two air regions on the two sides of the diaphragm may be considered as without communication with one another, or the ring of material must be used. In other words, the annulus must be utilized as a buffer, if the cone is vibrated in relatively free air. The annulus, he says, may be connected with a stationary ring.

If the dimensions of this sound box device of Brown be multiplied by four, if one may estimate its size, it would be approximately the size of the devices of the appellant and of the appellee. It would differ from both in the annulus or ring, in that the appellant's device treats the annulus as a part of the sound-producing diaphragm; it would in that respect more closely conform to the appellee's device, but the latter differs from the teaching of Brown's patent, in that the flexible annulus is of relatively thick and heavy leather, operating as a drag on the movement of the periphery of the base of the conical diaphragm. Both the appellant's and the appellee's device have an annulus capable of acting as a buffer, to prevent to some extent the sound waves generated from the back of the cone interfering with those generated by the forward portion of the cone.

So far as the case at bar is concerned, the notable teachings of the Brown patent are (1) a light conical diaphragm, (2) connected at its apex with the stylus or source of vibratory power, (3) connected by a plane annulus with a stationary ring or side of the device, (4) permitting the cone to vibrate as freely as possible in the direction of its axis, (5) the ring to act as a buffer between the waves generated by the front and back portions of the conical diaphragm, (6) that the cone be of extremely light material. It differs most notably in size from the devices of the parties hereto, but its function is the same—to reproduce sound—and as has been pointed out it differs in the material of the annulus. The notable feature of this patent, so far as the case at bar is concerned, is the emphasis placed by the inventor upon the annulus connection of the diaphragm and its function. The cone was not new in the art; neither was the idea of the cone connected at the periphery of its base by a resilient "flange." Brown's effort was to decrease the weight of the cone, and to decrease the resistance of the flange or rim to the free vibrations of the cone.

Other patents were introduced in evidence, but need not be specially considered. Enough has been stated to show that the use of a large cone of paper, or similar material, either unsecured, or secured at its base to a vibrating or to a nonvibrating plane, actuated by impulses applied to its apex in free air, for the purpose of generating self-sustaining sound waves, was not new in the art of sound reproduction at the time of the Hopkins patents.

It is obvious that Hopkins entered a crowded field of effort for sound reproduction. The above-mentioned Maxwell patent, of a large conical diaphragm with a base of from 7 to 8 inches in diameter, attached to a thin vibrating plane, and secured to the side of a box inclosing the cone, or two cones in alternate forms, shows that the loud-speaking or self-sustaining sound reproducer was invented in connection with the art of telephony. Practically every element in the Hopkins patent was known to the prior art. It follows that, if Hopkins by a nice and suitable adjustment of these elements produced a combination which in the form proposed was peculiarly suited to the problem it was intended to solve, that is, the reproduction of sound waives from a phonographic record in substantially the form and intensity of the sound to be reproduced, the patent should be confined to a narrow limit, and when an attempt is made to carry over into another art the monopoly granted by his patent in this narrow field of the phonographic art, his claims of monopoly in this new art should be carefully scrutinized, for in this field the public is entitled to utilize all the old forms of sound-producing devices, if dedicated thereto, and, if not, the owners of prior patents are entitled likewise to extend their monopoly thereto.

In short, the appellant seeks to crowd out of the new art improvements upon devices already in existence in the art of sound reproduction, on the ground that, although different in form from his device, they constitute either colorable alterations thereof, or improvements thereon, necessarily utilizing his device as a base. But, as has already been pointed out, his basic idea of a direct propagation of self-sustaining sound waves from a sounding board or diaphragm operating in free air had been anticipated.

On the question of infringement the appellee points out the flexible leather connection between the paper cone and the metal rim in its device, and that in the appellant's device this connection is an integral part of the vibratory diaphragm, and of the same crisp material required for the cone; that the outer edge of the appellee's flexible rim is less than the minimum declared necessary in the appellant's patent and in its file wrapper letters to the Patent Office; it points out that, true to the statements in the Hopkins patent, appellee's cone device, and flexible rim, and metal frame will not produce satisfactory sound reproduction without other accessories. To prove that fact the appellee constructed a loud speaker with these elements alone, and demonstrated to the satisfaction of the trial judge that such a speaker was unsatisfactory.

The appellee points out that there is an

inherent difficulty in the use of a free cone in a radio loud speaker, due to the fact that the cone operated in free air tends to generate sound waves on both its inner and its outer surface; that while the wave on one side is being started by pressure, on the opposite side another wave is being started by decreasing pressure, both waves originating by the same forward or backward movement of the cone. These waves, meeting at the edge of the cone, do not harmonize, and tend to modify and to some extent neutralize one another.

To overcome this tendency the appellee attaches the metal rings to which his annulus is secured to a board, called a baffle board, which extends the plane of the base of the cone several inches, thus further separating the two conflicting sources of sound waves. The appellee also uses felt pieces, on the metal ring or rim, to prevent its vibration, and surrounds the back of the cone with a container partly filled with felt. By these devices the appellee has perfected a loud speaker, using a smaller cone than Hopkins thought possible in his claims for a patent.

The appellee's device, by reason of its dimensions, does not infringe claims 1, 2, 3, 5, 6, or 7 of the Hopkins patent, with respect to a tympanum "having a free area exceeding nine inches in diameter and a conical portion, the diameter of which is not less than eight-tenths of the diameter of the said free area." It is claimed, however, that it does infringe claims 4 and 8, which are as follows:

"4. An acoustic device, comprising a tympanum support having a circular aperture, and a light tympanum freely exposed to unconfined air and having its outer edge rigidly mounted on said support in said aperture; said tympanum having a central conical portion, the base of which exceeds in area one-half the effective area of the said tympanum; the tympanum being of sufficient area to impart to the surrounding free air, when vibrated, sound waves substantially corresponding in intensity to the original sound waves."

"8. An acoustic device, comprising a tympanum embodying a bodily movable, central conical portion, and an annular rim which encircles said conical portion and which is rigidly supported, said conical portion being freely exposed on all sides to unconfined air and being of sufficient area to produce self-sustaining sound waves in the surrounding air when vibrated, substantially as described."

Claim No. 4 is indefinite as to the size of the tympanum, but the patentee, both in the patent and in his letters, in which he states,

and truthfully, that size is of the essence of his patent, gives 9 inches as the minimum size workable in his plan for self-sustaining sound waves generated in free air by a phonographic needle. This claim, No. 4, is made evidently to cover the relative area of the annulus and the cone. The question of estoppel is raised by the appellee, who claims that the patentee is estopped to claim a lesser diameter than 9 inches for the tympanum. Claim No. 8 is substantially identical with claim No. 4, except that in the latter the relative area of the base of the cone and of the tympanum is not stated, and also is left indefinite. Here the diaphragm is merely described as composed of a central conical portion and an annular rim, freely exposed to unconfined air, "being of sufficient area to produce self-sustaining sound waves in the surrounding air, when vibrated substantially as described."

The representations or arguments of the patentee in the patent proceedings do not, under the circumstances here disclosed, constitute an estoppel. American Cone & Wafer Co. v. Denaro (C. C. A.) 297 F. 913; Fullerton Walnut Growers' Ass'n v. Anderson-Barngrover Mfg. Co. (C. C. A.) 166 F. 443; R. Hoe & Co. v. Goss Printing Press Co. (C. C. A.) 30 F.(2d) 271, 275. We must, however, either hold these claims void for indefiniteness, or that the claim only covers a slightly smaller or larger cone, which will, in the operation of a phonograph, by the use of lever connections, decreasing the amplitude of vibration about one-half, produce sound waves of such volume as will be "of substantially the same intensity as the original." In either case it is clear that the defendant appellee does not infringe said claims, for, so used, its alleged infringing diaphragm would not accomplish the object or measure up to the standard set up by the appellant.

We have not so far alluded to the commercial aspects of the case. The cone type of radio loud speaker is widely used. The appellant's witnesses estimate that 1,250,000 of the type here involved have been sold. The appellant has never manufactured a radio loud speaker. The first radio loud speaker of the cone type was made in 1921 by Mr. Ferrand, a licensee of the appellant, and now a stockholder in the appellant corporation, "after several years' experiment." If the Hopkins patent was a basic and generic patent, on the form and use of a large diaphragm or sounding board to produce self-sustaining sound waves, this great production would be strong evidence of its utility, and consequently of his invention; but the evidence here simply indicates that the appellant has been remarkably successful in levy-

ing tribute upon a new and rapidly extending art. He has succeeded in asserting a monopoly in a new field, not in contemplation at all by the patentee when he made his invention. We cannot see that this success is as persuasive as such evidence sometimes is, as to the exercise of the inventive faculty. The appellant has been active in asserting its alleged monopoly, and has thus, no doubt, forced many to buy their peace in a situation so full of doubt, confronted by such dire penalties, as are involved in unsuccessful patent litigation. See Lektophone Corporation v. Sylo Lighting Fixture Co. (D. C.) 11 F.(2d) 421; Id. (C. C. A.) 16 F.(2d) 7; Lektophone Corp. v. Western Electric Co. (C. C. A.) 16 F.(2d) 10; Id. (D. C.) 20 F.(2d) 150; Lektophone Corp. v. Brandes Products Corp. (C. C. A.) 20 F.(2d) 155; Lektophone Corp. v. Rola Co. (D. C.) 27 F.(2d) 758.

We are in accord in general with the views expressed by the Circuit Court of Appeals of the Second Circuit in Lektophone Corp. v. Sylo Lighting Co., 16 F.(2d) 7, supra, and in Lektophone Corp. v. Western Electric Co., 16 F.(2d) 10, supra, as to noninfringement, and like that court find it unnecessary to pass upon the validity of the patent, limited as its interpretation must be by the state of the prior art, and by the intended application of the device to a phonograph. We are also in accord with the decision of that Circuit Court and that of the Circuit Court of Appeals of the Third Circuit in Lektophone Corp. v. Brandes Products Corp., 20 F.(2d) 155, holding invalid claims 29 and 30 of patent No. 1,271,527, but we cannot follow the latter decision in so far as it holds that a flexible, nonresonant rim or annulus connecting the cone of the diaphragm to the stationary metal rim is the equivalent in a sound-reproducing device of the flat rim or plane annulus of Hopkins tympanum, for the reasons hereinbefore stated, namely, that Hopkins made no claim to a nonresilient connection of the cone to the metal frame, as a preventative of blasting, and that such flexible connection was anticipated, as above indicated, as early as 1879 by Maxwell, and in 1910 by Brown. Furthermore, the method of connecting a central vibrating cone at the base of its perimeter to a circumscribing vibrating body, square or circular in perimeter, and of securing the latter to a stationary frame, was frequently used in the art of sound reproduction, as appears from the above discussion.

In this connection it should be observed that the appellate court is somewhat in the same position, with reference to the experiments or demonstrations conducted in the presence of the trial court, as it is with reference to the witnesses which appear before it. Unless we are, in effect, to try the case de novo on appeal, which is not permissible, we must rely upon the judgment of the trial court as to what was demonstrated before it. One of the most unpromising of sounding board exhibits—that is, one departing most from the appellant's specifications, for a sounding board or diaphragm—was, without objection, demonstrated during the argument before us. A large plane and a very small cone in this demonstration seemed to satisfactorily reproduce music being broadcast by radio. It appears from the record that most of the exhibits constructed by the appellee in accordance with prior patents satisfactorily reproduced self-sustaining sound waves, and satisfied the trial judge that the appellant's device was merely an enlargement of designs already available to the radio art in the Patent Office, and also that the appellee's device, operated with the parts alleged to infringe the appellant's patent, failed to satisfactorily reproduce such sounds within the required range, thus proving to his satisfaction that the flexible, elastic, nonresonant annulus was not the equivalent of the appellant's resonant annulus, and also that the appellee's diaphragm was too small, without other accessories, to operate as the appellant's device was claimed to do; that is to say, the proof before the trial judge showed to his satisfaction that the attorneys for the patentee told the truth when they represented to the Patent Office that the dimensions stated in their application were of the essence of the invention.

Our view as to annulus of the diaphragm in the appellant's device seems to be in accord with that expressed by Mr. Justice Tomlin of the High Court of Justice of Chancery Division of Great Britain, in dealing with the alleged infringement of the appellant's device by the diaphragm of the Mascot radio loud speaker having an annulus of thin, nonresonant paper.

We must either hold that the appellant's device is void for lack of invention, or that he is so narrowly confined, by the specified dimensions and claims of his patent, that the smaller device of the appellee, with its limp leather annulus, does not infringe. It is sufficient, for the purpose of this case, to follow the latter course, as the trial judge did.

Judgment affirmed.