## AURYNGER v. RADIO CORPORATION OF AMERICA. *
### No. 273.

Circuit Court of Appeals, Second Circuit.
Aug. 8, 1938.

John J. Aurynger, in pro. per.

Stephen H. Philbin and James G. Norton, both of New York City, for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The patent in suit is No. 1,608,472 granted on November 23, 1926, on an application filed December 1, 1922, by John J. Aurynger, the plaintiff and now the owner. It is for an electrical condenser. He relies upon claims 1 and 5, which read:

"1. An electrical condenser having a plurality of parallel metallic plate elements each insulated from the others and arranged to form a plurality of separate capacities through the same area of a dielectric medium, said capacities superimposed upon one of said elements and means for holding said plate elements in assembled order."

"5. An electrical condenser having a plurality of parallel metallic plate elements each insulated from the others and arranged to form a plurality of separate capacities through different longitudinal sections of the same area of a dielectric medium, one of said plate elements stationary, others of said elements rotating for associating separately with said stationary element, said rotary elements secured in longitudinal sections upon a shaft having the same axis of rotation and means for holding said elements in assembled order."

As will readily be noticed, claim 5 is for a variable condenser having the peculiar characteristics of claim 1. Electrical

*Writ of certiorari denied 59 S.Ct. 98, 83 L.Ed. —.

condensers were old and their mode of operation well known when Mr. Aurynger produced what he succeeded in having patented as his invention. Such condensers are used extensively in radio receiving sets where, because of lack of available space, it is often advantageous to have them so constructed that their capacity is large in comparison to their physical size. In whatever form made, and there are a number, an electrical condenser consists of at least two electrical conductors separated by a non-conductor. When so arranged and one of the conductors is connected in a circuit of higher electrical pressure than that in the other conductor there will be some interaction between the two which is called capacity coupling. The amount of such coupling is called the capacity and that will vary with the size of the opposing surfaces of the conductors as well as with their distance apart. The larger the surfaces and the nearer they are together the greater the capacity. This capacity represents the work-use of the condenser for it is its ability to store up electric energy and hold it for use. In a radio receiver, this ability of a variable condenser to change its capacity as the amount of opposed plate surface is changed by the rotation of one of the conductors enables the operator of the set to tune it, as it is called, to the different frequencies sent out by broadcasting stations and select the program desired. In speaking of the ability to change its capacity we have, of course, in mind only the variable condensers and even they in the form described have only one capacity at any given time.

Aurynger constructed a condenser having more than one capacity and in his construction got the same result by adding only one set of plates which would have been obtained by adding another condenser with its two additional sets of plates to make four to do what he does with only three. He speaks of this as the triatic order and to bring it about used a set of stator plates (a); with a set of rotor plates (b); and a second set of rotor plates (c). The individual plates were placed parallel to each other and alternately in rows of three consisting of one of each set. Each set of plates being insulated from each of the other sets but having the opposing plate surfaces separated from one another only by air, had capacity coupling to each of the other sets. Thus, he really put two condensers into one for there was a capacity

between stator (a) and rotor (b); a second between stator (a) and rotor (c); and a third between rotor (b) and rotor (c).

As described in the specifications and as shown in each of the drawings, except possibly Fig. 11, each set of rotor plates is operated by a separate shaft or spindle. Even in Fig. 11 there is nothing to show single control except that there is a fillet joint of hard rubber or bakelite between two ends of the rotor spindles that insulates them electrically. If this were keyed, of course the two spindles would have to rotate as one but such evidence as there is to show that the spindles are keyed is not convincing especially in view of the statement in the specifications in reference to Fig. 11 that, "The rotary plates will operate with the single stationary set of plates as described under Fig. 10" where the sets of rotor plates turn independently of each other. Moreover, the feature of single control forms no part of the claims in suit. It was old and is mentioned now only because it has some bearing on the question of infringement.

It is very doubtful whether the claims in suit are valid in view of patent No. 892,-311, granted Scheller on June 30, 1908; especially the German patent No. 201,268 granted to Lorenz August 29, 1908; and the French No. 467,467 granted Levy March 30, 1934. But it may be that they can be construed to avoid anticipation and for the present that need not be determined as we agree with the trial judge that no infringement was proved.

The accused condenser assembly is manufactured by the defendant and used in radio receiving sets. It is what is called a gang condenser that is made by placing two or more sets of rotor plates on a single shaft so that they will turn together; and fitting to each set of rotor plates a separate set of stator plates. Each set of rotors is separated from its own stators only by the dielectric (air). The rotor plates are electrically connected by the common shaft and all accordingly have the same electrical pressure imposed upon them. There can therefore be no capacity between any set of rotor plates and any other such set in the condenser. The stator plates, however, have different potentials so there is a capacity between each set of rotors and its stators. The result is in effect as many different condensers as there are combinations of rotors and stators. The defendant claims that its accused condenser, known as

R-5, is a true gang condenser of the type described. If so, it certainly does not infringe.

Whether it does conform to the conventional gang condenser type or have the interaction between adjoining sets of plates to get the superimposed capacity of the Aurynger condenser depends upon whether each set of stator plates is effectively shielded from each other set. Shields between sets of rotor plates are wholly unnecessary since, as we have already pointed out, they have a common source of supply of electrical energy and consequently the same potential at all times.

The evidence that the defendant's stators were effectively shielded from each other is too convincing to leave any fair doubt of the fact. Such a gang condenser used to tune a radio receiving set must be shielded to perform its function without causing regeneration that might build up to the point where squeals result from the oscillations and seriously interfere with the operation of the receiver. This shielding was needed and the fact of its presence was well proved.

There is an intermediate plate in the R-5 condenser which the evidence shows does act as an effective shield. It is also the fact that this shield is electrically connected to the rotors and from this we are urged to find that an additional capacity is created. Certainly there must be a capacity effect between each shield and the adjoining sets of stators but because shield and rotors have at all times the same potential there can be no additional, in the form of a new, capacity but only an increase in the existing capacity between each set of rotors and its own stators.

This difference between the R-5 condenser and Aurynger's type having his so-called triatic order becomes very clear when it is remembered that always, whether Aurynger's rotors were mounted on separate spindles or on what is claimed to be really one as in Fig. 11, previously mentioned, they were separately connected to a supply of electrical energy and never electrically connected directly as are the rotors in the R-5 condenser of the defendant. The third capacity of Aurynger is due to the fact that there can be some capacity coupling between sets of rotor plates as well as between stators and rotors while in the R-5 condenser any dual function of the shield is only in its action both as a

shield and as a part of the rotors between which there can be no capacity coupling because of the simple fact that all the rotors have the same potential at all times. The defendant's condenser does not, therefore, infringe either claim in suit. See, Lektophone Corp. v. Western Electric Co., 2 Cir., 16 F.2d 7; Linde Air Products Co. v. Morse Dry Dock & Repair Co., 2 Cir., 246 F. 834, 838; Grubman Engineering & Mfg. Co. v. Goldberger, 2 Cir., 47 F.2d 151.

Decree affirmed.