## AURYNGER v. RCA MFG. CO.

### Civ. No. 572.

District Court, D. Maryland.
July 22, 1940.

John J. Aurynger, in pro. per.

Fish, Richardson & Neave and Stephen H. Philbin and Harry R. Pugh, Jr., all of New York City, and Semmes, Bowen & Semmes and Lawrence Perin, all of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge.

The patent in suit was granted to the plaintiff on November 23, 1926, on application filed December 1, 1922, and is Aurynger Patent No. 1,608,472. It is for an electrical condenser, which, in nontechnical language, may be described as a reservoir of electrical energy. The type here in issue is for use in a radio receiving set, the ability of the condenser to vary its capacity, i. e., its store of electrical energy, enabling the operator of the set to tune it to the different frequencies sent out by broadcasting stations, and thus to select the program desired.

Although there are seven claims in the patent, only two, one and five, are here in suit. They are as follows:

"1. An electrical condenser having a plurality of parallel metallic plate elements each insulated from the others and arranged to form a plurality of separate capacities through the same area of a dielectric medium, said capacities superimposed upon one of said elements and means for holding said plate elements in assembled order."

"5. An electrical condenser having a plurality of parallel metallic plate elements, each insulated from the others and arranged to form a plurality of separate capacities through different longitudinal sections of the same area of a dielectric medium, one of said plate elements stationary, others of said elements rotating for associating separately with said stationary element, said rotary elements secured in longitudinal sections upon a shaft having the same axis of rotation and means for holding said elements in assembled order."

The same patent has been in litigation in the Second Circuit, in the case of Aurynger v. Radio Corporation of America, 98 F.2d 765, certiorari denied, 305 U.S. 598, 59 S.Ct. 98, 83 L.Ed. 379, where, in a decision of the Circuit Court of Appeals for that Circuit, affirming the District Court, the patent was held not to have been infringed by the Radio Corporation of America. The present defendant concedes that there is not such privity between it and the defendant in the New York suit, although it is a wholly-owned subsidiary of the latter, as to bar the present suit. See

Hazeltine Corporation v. General Electric Company, D.C., 19 F.Supp. 898.

The New York court declined to pass upon the question of validity of the patent, but made this very significant observation, 98 F.2d at page 766: "It is very doubtful whether the claims in suit are valid in view of Patent No. 892,311, granted Scheller on June 30, 1908; especially the German Patent No. 201,268 granted to Lorenz August 29, 1908; and the French [Patent] No. 467,467 granted Levy March 30, 1934. But it may be that they can be construed to avoid anticipation and for the present that need not be determined as we agree with the trial judge that no infringement was proved."

That opinion contains the following condensed statement (98 F.2d at page 765) of the Aurynger device which is believed by this court to be an accurate one, and it is therefore adopted: "Aurynger constructed a condenser having more than one capacity and in his construction got the same result by adding only one set of plates which would have been obtained by adding another condenser with its two additional sets of plates to make four to do what he does with only three. He speaks of this as the triatic order and to bring it about used a set of stator plates (a); with a set of rotor plates (b); and a second set of rotor plates (c). The individual plates were placed parallel to each other and alternately in rows of three consisting of one of each set. Each set of plates being insulated from each of the other sets but having the opposing plate surfaces separated from one another only by air, had capacity coupling to each of the other sets. Thus, he really put two condensers into one for there was a capacity between stator (a) and rotor (b); a second between stator (a) and rotor (c); and a third between rotor (b) and rotor (c)."

■ While the patentee in the present suit maintains that his specifications, claims and drawings are sufficiently broad not to limit him to the so-called triatic order just referred to, I cannot accept that view, because it has not been demonstrated that the claims, specifications and drawings really contemplate other than the triatic order. This is confirmed by the first sentence of the patent, reading as follows: "This invention consists of an additional set of plates and a third terminal to any condenser, any two of which form a condenser." The reasonable interpretation of

the words "any two", as here used, indicates that those words refer to plates.

It has been disclosed in the trial of the present suit that, whereas the New York court had the advantage of a disclosure and analysis of all of the alleged prior art references that have been presented to this court, it did not, however, have the advantage of practical demonstrations of the devices such as this court has been given, at least not the demonstrations that have been given of the plaintiff's device; and it is further significant, as stated in the course of the present trial, that the Patent Office did not have cited to it any of the prior art references introduced in the present case,— some ten in number,—except two, namely, a French patent to one Firth, No. 469,004, and a German patent to Lorenz, No. 224,-249, the first of which is not relied upon in the present case by the defendant, and the second one is admitted not to be as closely related to the device in issue as are several of the other prior art references.

First, as to the question of validity, this court believes that the patent is invalid, because it is anticipated by the prior art patents and publications referred to, more particularly by the German patent, Lorenz, No. 291,268, and by the disclosure in "Wireless Experimenter's Manual", by Bucher, the German patent having issued in 1908, and the article by Bucher having appeared as early as 1920.

■ It is not necessary to analyze in detail those prior art references. It is sufficient to refer to Defendant's Exhibit 9, which is a graphic disclosure of the evolution of the condenser, as used for radio receiving purposes, running through the various prior art references, including Bucher and Lorenz, just referred to. We believe that a study of that evolution must lead to the inevitable conclusion that the combination which the plaintiff patentee adopted is merely one of those variations which any one, reasonably skilled in the particular art, might well have adopted. Of course, it is true that even though all parts of a device may be old, if they produce a new, or even the same result in a new, useful way, they may rise to the dignity of a patentable device. But here I reach the conclusion that the exact combination, although admittedly not to be found in any of the prior conceptions, is, nevertheless, nothing but a normal variation indicated by what was already known; and further, that, as the demonstrations indicated to this

court, it is, at best, a rather poor variation or imitation. This seems to have been the view that the New York court leaned to, but found it unnecessary to make a specific ruling thereon.

Furthermore, there is no proof of utility attaching to the Aurynger device. Aurynger has had his patent for nearly fourteen years, yet, according to his own statement, his device has never been put into commercial use. Such may be due to hard luck. It may be due to litigation such as the present, or to a number of other causes. But the fact remains that there is a total absence of proven utility which, were there any doubt as to the patent's invalidity,—which this court does not entertain, would require a finding of invalidity.

Having found the patent to be invalid for the reasons just stated it is, of course, not necessary to determine whether or not there has been infringement. As already stated, the New York court held there was no infringement by a device which is, admittedly, virtually the same as the one here accused. In order, however, that this whole matter may be set at rest, in so far as this court is concerned, and this court believing that the parties are entitled to a full expression of its views on both points, we shall not rest merely upon a finding of invalidity of the patent.

Proceeding, therefore, to a consideration of the question of infringement, it necessarily follows from what has just been said that unless there is some real novelty, something of distinctive import in the use of the intermediate plate, or shield, in the defendant's condenser, the defendant's device must also be treated as nothing more or less than a modification or improvement upon the prior art, falling into the same general category as the modification that plaintiff developed.

■ I conclude that there is infringement, because the two devices are, for all practical purposes, merely slight variations, one from the other, brought about by adopting things that were well known in the art.

The New York court on this point has the following to say, 98 F.2d at page 766:

"There is an intermediate plate in the R–5 condenser which the evidence shows does act as an effective shield. It is also the fact that this shield is electrically connected to the rotors and from this we are urged to find that an additional capacity is created. Certainly there must be a capacity effect between each shield and the adjoining sets of stators but because shield and rotors have at all times the same potential there can be no additional, in the form of a new, capacity but only an increase in the existing capacity between each set of rotors and its own stators.

"This difference between the R–5 condenser and Aurynger's type having his so-called triatic order becomes very clear when it is remembered that always, whether Aurynger's rotors were mounted on separate spindles or on what is claimed to be really one as in Fig. 11, previously mentioned, they were separately connected to a supply of electrical energy and never electrically connected directly as are the rotors in the R–5 condenser of the defendant. The third capacity of Aurynger is due to the fact that there can be some capacity coupling between sets of rotor plates as well as between stators and rotors while in the R–5 condenser any dual function of the shield is only in its action both as a shield and as a part of the rotors between which there can be no capacity coupling because of the simple fact that all the rotors have the same potential at all times. The defendant's condenser does not, therefore, infringe either claim in suit. * * *"

I am not, however, prepared to adopt that conclusion. I am not unmindful of the very clear statement by counsel for the defendant company introduced in this proceeding as follows: "If the Aurynger idea of using three plates, each of which interact with each, were attempted to be used in any of the defendant's sets the sets would not work. In the defendant's sets, every effort is made to keep three plates, or three parts of the condenser, from reacting upon each other. Every effort is made to have only two plates react each with each other, that is, the rotor is to react with its stator; there is to be no reaction between the rotor and the next condenser, or the rotor or the stator. The two condensers are completely isolated and each is a separate unit, entirely apart from Aurynger's idea of having three potentials or three plates each interacting with the other two. It is a practical difference and, as we can show, it is a difference that is fully justified by the prior practice, because the single condensers were old. And, as I say, again, all that the defendant does is to put the two single condensers to-

gether physically, and have them both operate on the same shaft, by the same control. That is, the rotors are on the same shaft, and rotated by the same control; but electrically they are separate, entirely separate and distinct to each condenser in the gang. Sometimes there are three condensers in the gang. Sometimes there are four condensers in the gang. So what the Aurynger invention is seeking is merely a hitching up of a series of condensers, and operating them by a single control, which was old in the art before Aurynger."

The above-quoted statement is believed to support the conclusion here reached, i. e., that whether we talk in terms of a shield, or whether we talk in terms of different grouping of the condensers, these are mere incidental modifications, and I am unwilling to make the distinction that is urged.

The fact, already alluded to, that the more desirable results, as was clearly demonstrated in the course of the trial, are produced with the use of the shield, is not conclusive except as showing that Aurynger's device is inferior to defendant's.

A decree will be signed in accordance with this opinion.